United States Court of Appeals,

Fifth Circuit.

No. 96-40912
Summary Calendar.

Joseph H. NORTON, Plaintiff-Appellant,

v.

E.U. DIMAZANA, M.D.;  Texas Department of Criminal Justice,
Defendants-Appellees.

Sept. 22, 1997.

Appeal from the United States District Court for the Southern
District of Texas.

Before WIENER, BARKSDALE and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Texas prisoner Joseph Norton appeals the district court's
dismissal as frivolous of his 42 U.S.C. § 1983 complaint alleging
that the deliberate indifference of the prison staff to his medical
needs violated his Eighth Amendment rights.  He also asserts that
the fee provisions of the Prison Litigation Reform Act violate his
right of access to the courts, that the district court abused its
discretion by employing irregular procedures in deciding his case,
that the court must provide him a copy of the transcript from his
*in forma pauperis* hearing, and that the district court erred by
denying his motion for counsel.  Finding no reversible error, we
affirm.

I

For years, Norton has experienced serious, painful problems
associated with a prolapsed rectum;  basically he has suffered from

1

grossly inflamed external hemorrhoids and encountered difficulties in retracting the muscles of his rectum after a bowel movement. In such cases, the muscles of Norton's sphincter are expelled from his anus, and reinserting them is too painful for Norton to accomplish alone. Prison medical staff, on many such occasions, rendered their assistance. They also gave Norton supplies, such as gloves and lubricants, to aid him in performing the job himself. For several years, Norton experienced these and associated problems in prison. Over the two-year span preceding this lawsuit, he saw medical professionals, both inside and outside the prison, at least monthly. Despite constant attention, Norton's condition has improved little.

Norton filed a complaint contending that approximately forty prison officials and prison medical staff members were deliberately indifferent to his serious medical needs, in violation of his Eighth Amendment rights. Among other things, he complains that prison officials should have attempted different diagnostic measures or alternative modes of treatment. He requests damages, injunctive relief, and appointment of counsel. Norton also alleged that, when the district court required him to provide information about his prison trust fund account, prison officials intentionally withheld information about the account. However, the District Clerk received the account information in timely enough fashion to compute and assess the initial, partial filing fee.

The district court conducted a hearing on Norton's motion for leave to proceed in forma pauperis ("i.f.p.") and on his allegation

that prison officials intentionally withheld account information. At this hearing, the court also sought to focus the issues asserted by Norton's complaint, and Norton testified at the hearing about the facts he alleged. The court orally granted Norton leave to proceed i.f.p. Then the court called a recess in the hearing, during which it ordered the defense attorney to review Norton's medical records. When the court reconvened, the judge noted that, in his opinion, the prison had not ignored Norton's physical condition. The judge nonetheless ordered the defense attorney to speak with doctors and file a report regarding Norton's medical condition.

The court subsequently issued a written order denying Norton's motion for leave to proceed i.f.p. and assessed a partial filing fee of $24 (twenty percent of the $120 district court filing fee), as required by the Prison Litigation Reform Act, Pub.L. No. 104-134, 110 Stat. 1321 (1996) ("PLRA" or "Act"). *See* 28 U.S.C. § 1915(b)(1)-(2) (setting out PLRA fee provisions).

The attorney for the defendants subsequently filed the report requested by the district court, with an attached affidavit by one Dr. Owen Murray and a certified copy of Norton's prison medical records. The district court reviewed the report, dismissed Norton's complaint as frivolous under 28 U.S.C. § 1915(e)(2)(b)(1), and denied Norton's motion for appointment of counsel as moot. Norton timely appealed.

In an earlier order, we granted Norton's motion for leave to proceed i.f.p. on appeal; assessed a $40 initial, partial filing

3

fee for the appeal; ordered Norton to pay the remainder of the $105 filing fee in installments pursuant to the PLRA; and denied Norton's motion for production of a transcript of the i.f.p. hearing in the district court. *Norton v. Dimazana,* No. 96-40912 (5th Cir. Feb.27, 1997) (unpublished). We now address the merits of Norton's appeal.

## II

On appeal, Norton raises five issues: (1) whether the filing fee provisions of the PLRA violate prisoners' right of access to the courts; (2) whether the district court erred in dismissing his section 1983 suit as frivolous; (3) whether the erratic procedure by which the district court denied him i.f.p. status and dismissed his appeal violates Norton's right to due process; (4) whether this court erred in denying his request for a transcript of the i.f.p. hearing; and (5) whether the district court erred in denying his motion for appointment of counsel.

## A

Construing his brief liberally, we first address Norton's assertion that the fee provisions of the PLRA deny prisoners constitutionally guaranteed access to the courts. In *Bounds v. Smith,* the Supreme Court articulated a "fundamental constitutional right of access to the courts[,]" 430 U.S. 817, 828, 97 S.Ct. 1491, 1498 52 L.Ed.2d 72 (1977), which requires prison officials to guarantee prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts. *Lewis v. Casey,* --- U.S. ----, ----, 116 S.Ct. 2174, 2180,

4

135 L.Ed.2d 606 (1996). Although other courts have addressed the issue, *see Nicholas v. Tucker,* 114 F.3d 17, 21 (2d Cir.1997); *Roller v. Gunn,* 107 F.3d 227, 231-33 (4th Cir.1997), *petition for cert. filed,* --- U.S.L.W. ---- (U.S. No. 97-5072) (June 20, 1997); *Hampton v. Hobbs,* 106 F.3d 1281 (6th Cir.1997), the question of whether the PLRA's fee provisions unconstitutionally deny access to the courts is an issue of first impression in this circuit.

Norton does not specify whether he is challenging the district court's assessment of fees for his original suit, for his appeal, or both. He did not challenge the assessment of a partial filing fee in the district court proceeding, and he paid the fee that the court imposed. The district court made no explicit findings regarding the constitutionality of the PLRA fee provisions. We normally review contentions not raised in the district court for plain error. *Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1428 (5th Cir.1996) (*en banc* ). To prevail on plain error review, an appellant must show: (1) that an error occurred; (2) that the error was plain, which means clear or obvious; (3) the plain error affects substantial rights; and (4) refusal to correct the error would seriously affect the fairness, integrity, or public reputation of judicial proceedings. *Highlands Ins. Co. v. National Union Fire Ins. Co.,* 27 F.3d 1027, 1032 (5th Cir.1994), *cert. denied,* 513 U.S. 1112, 115 S.Ct. 903, 130 L.Ed.2d 786 (1995).

This case is on slightly different footing from the normal failure to assert a claim, since a liberal reading of Norton's

5

brief also presents a challenge to the imposition of fees on appeal. Obviously, Norton could not have challenged the assessment of appellate fees during his district court proceeding. Nevertheless, we find that under either plain error or *de novo* review, the fee provision does not unconstitutionally deny prisoners access to the courts.

The fee provision of the PLRA provides:

> (b)(1) ... [I]f a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of—
>
> > (A) the average monthly deposits to the prisoner's account;  or
> >
> > (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.
>
> (2) After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b), as amended by the PLRA. The PLRA provides that prisoners proceeding i.f.p. are responsible for paying the full amount of the filing fee;  however, the statute provides that impecunious litigants may pay the fee over time, if necessary. The PLRA also provides that no prisoner shall be denied access to the courts because he or she has insufficient funds to pay the initial, partial filing fee. 28 U.S.C. § 1915(b)(4), as amended by the PLRA ("In no event shall a prisoner be prohibited from bringing a civil

action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.").  The federal statute, of course, does not affect a prisoner's ability to bring actions in state court or through state administrative proceedings.

"While the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson,* 3 F.3d 816, 821 (5th Cir.1993) (footnotes omitted), *cert. denied,* 510 U.S. 1123, 114 S.Ct. 1081, 127 L.Ed.2d 397 (1994).  It is apparent that the fee provisions of the PLRA do not hinder prisoners' abilities to prepare or transmit their cases or appeals to court.

To be sure, the Act's fee provisions do change the terms of i.f.p. litigation:  litigants proceeding under the statute must now pay at least part of the fee up front, and whenever able, i.f.p. litigants will now be responsible for making monthly installment payments toward repaying the full amount of the filing fee (usually $105 for an appeal).  28 U.S.C. § 1915(b)(1)-(2);  *see also* 28 U.S.C. § 1913 note (Judicial Conference Schedule of Fees).  Previously, i.f.p. litigants were not responsible for prepaying any of the filing fee, and although such litigants technically remained liable for the full amount of the fee, few in fact ever paid it. *See Abdul-Wadood v. Nathan,* 91 F.3d 1023, 1025 (7th Cir.1996) ("All § 1915 has ever done is excuse prepayment of docket fees;  a

7

litigant remains liable for them, and for other costs, although poverty may make collection impossible.").

The obligation to pay filing fees, over time if necessary, is not an unconstitutional denial of access to the court system. As we have noted before, "there is no absolute "right' to proceed in a civil action without paying a filing fee; this is a procedural privilege that Congress may extend or withdraw." *Strickland v. Rankin County Corr. Facility,* 105 F.3d 972, 975 (5th Cir.1997); *Startti v. United States,* 415 F.2d 1115, 1116 (5th Cir.1969). Furthermore, section 1915(b)(4) contains an explicit guarantee that no prisoner will be barred from pursing a civil action, or from appealing a civil or criminal judgment, because he or she does not have enough money. 28 U.S.C. § 1915(b)(4). This saving provision sufficiently guarantees that all prisoners will have access to the courts, regardless of their income. *Nicholas,* 114 F.3d at 21.

The fee provisions of the PLRA, in a sense, level the playing field between incarcerated i.f.p. litigants and other litigants in the federal courts. Non-i.f.p. litigants must generally consider the cost of filing when deciding whether to bring a civil action or appeal in federal courts. The PLRA changes the rules of i.f.p. litigation, requiring indigent prisoners for the first time to make the same prudential decisions about the merits of their lawsuits that everyone else makes before filing. *Adepegba v. Hammons,* 103 F.3d 383, 386 (5th Cir.1996). This limits the access of indigent prisoners to the courts no more than the filing fee restricts non-i.f.p. litigants. To the contrary, the PLRA provisions

8

allowing repayment over time allow impecunious prisoners to bring actions even when they are unable to pay filing fees up front. This allows them more access to the courts than most non-prisoners receive. We therefore find that the fee provisions of the PLRA do not unconstitutionally limit the access of indigent prisoners to the courts.

B

Norton challenges the district court's dismissal as frivolous of his section 1983 suit claiming deliberate indifference to his serious medical needs, in violation of the Eighth Amendment. The district court dismissed his suit under 28 U.S.C. § 1915(d), now redesignated as § 1915(e)(2)(B)(i) by section 804 of the PLRA. We review district court dismissals as frivolous for abuse of discretion. *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir.1997).

The district court may dismiss a case as frivolous under either the old section 1915(d) or the new section 1915(e)(2)(b)(i) if it lacks an arguable basis in law or in fact. *McCormick,* 105 F.3d at 1061. In order to show that his medical care violated the Eighth Amendment, Norton must allege that prison officials were deliberately indifferent to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. *Id.* at 105-06, 97 S.Ct. at 291-92. "Subjective recklessness," as used in the criminal law, is the appropriate test for deliberate

9

indifference. *Farmer v. Brennan,* 511 U.S. 825, 838-40, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994).

It is amply clear that prison officials were neither reckless nor deliberately indifferent to Norton's admittedly serious medical needs. In fact, the record demonstrates that quite the opposite was true. There is extensive evidence in the record that prison officials afforded Norton a great deal of care and attention.[1]

---

[1] In July of 1994, Norton requested that prison officials grant him sick leave from work because the muscles in his rectum would not retract. At a subsequent doctor visit, the physician took note of Norton's hemorrhoidal condition and prescribed Anusol and Metamucil. The doctor did not note that Norton's rectum was prolapsed.

In August of the same year, Norton submitted another sick-call request, again complaining of rectal prolapse and pain. A physician diagnosed severe rectal prolapse, but no bleeding. The doctor prescribed Psyllium powder, Ibuprofen, and more Anusol. The doctor also referred Norton to a proctologist and gave him a lay-in pass for two days.

Norton was in and out of the hospital often between September and December 1994, complaining of constant rectal pain. On his first such visit, the physician diagnosed external hemorrhoids, but no rectal prolapse. The doctor continued Norton's prescription for Psyllium and Ibuprofen. A week after this visit, Norton went to the prison infirmary with a prolapsed rectum. He reported that he had suffered such a condition twelve times in the previous year. Doctors reinserted Norton's rectum and instructed him to drink water. Two weeks later, a nurse had to reinsert Norton's rectum again. A physician gave Norton a pass for a plastic donut for his hemorrhoids later in October. In early November, Norton suffered another prolapsed rectum that he could not self-correct. A nurse issued Norton gloves and lubricant for future self-reinsertion, prescribed Motrin, and had a nurse reinsert Norton's sphincter.

Norton was back in the prison infirmary in December 1994, complaining of a prolapsed rectum and requesting another self-care kit. Infirmary staff repositioned Norton's rectum and gave him more gloves and lubricant. In January 1995, prison officials changed Norton's medical classification to reflect Norton's obvious problems with anal expulsion. The

10

The medical records indicate that Norton was afforded extensive medical care by prison officials, who treated him at least once a month for several years, prescribed medicine, gave him medical supplies, and changed his work status to reflect the

---

infirmary staff gave him more self-treatment supplies two weeks later.

Prison officials referred Norton to a specialist at the University of Texas Medical Branch ("UTMB") in February 1995. The physician there noted no rectal prolapse during the evaluation, but recommended a stool softener, a lifting restriction to no more than ten pounds, and a change in job assignment to a position with little walking or standing. The clinic notes from Norton's next visit to the prison clinic reflect the recommendations given by the UTMB physician. The prison physician gave Norton Metamucil, restricted Norton to a lower bunk and a ground-floor cell in the prison, restricted him to walking 100 yards, and limited him to lifting ten pounds and sedentary work. However, the prison physician listed Norton's "bad knee" as the reason for the restrictions. During this time, Norton requested a new plastic donut, since his old one had sprung a leak. The prison provided a new donut the next day.

In April 1995, the inmate clinic reported that Norton was doing well with his prescriptions and restrictions, although he was still expelling his sphincter muscles during bowel movements. The clinic gave Norton a new plastic donut and a new self-help kit. The following month, the clinic reinserted Norton's rectum again, gave him a new donut and some latex gloves, and noted that his condition could worsen with walking.

This would become something of a routine for Norton; even with the equipment to reinsert his own rectum, on several occasions he could not perform the repositioning on his own and was forced to go to the clinic. Physicians and nurses in the clinic reinserted Norton's rectum in May and June, three times in August, and again in November and December. Norton requested a referral to the hospital at UTMB. The prison provided him hemorrhoidal cream and directed him to record each episode of prolapse in order to justify a referral.

Subsequent to all of this treatment, Norton filed the instant lawsuit claiming that the prison had been indifferent to his medical needs.

11

seriousness of his problem. Norton's complaints about the treatments he has received, and the facts he alleges, simply do not state a claim for deliberate indifference.

Norton also alleges that medical personnel should have attempted different diagnostic measures or alternative methods of treatment. Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs. *Young v. Gray,* 560 F.2d 201, 201 (5th Cir.1977); *Spears v. McCotter,* 766 F.2d 179, 181 (5th Cir.1985). The district court correctly dismissed this action as frivolous.

## C

Next, Norton loosely asserts that the erratic procedure by which the district court denied him i.f.p. status and dismissed his appeal violates his right to due process. During its consideration of Norton's request to proceed i.f.p., the district court evidently conducted a hearing on Norton's claims in order to focus the issues in this case. Although the court session was not characterized as a *Spears* hearing, it apparently served that purpose. *See Spears v. McCotter,* 766 F.2d 179 (5th Cir.1985) (establishing courtroom hearing as substitute for motion for more definite statement in *pro se* cases), *overruled on other grounds, Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989).

In a *Spears* hearing, the district court may make only limited credibility determinations, *Cay v. Estelle,* 789 F.2d 318, 326-27 (5th Cir.1986), *overruled on other grounds, Denton v. Hernandez,* 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992), and the court

12

must take care that the evidence considered is authentic and reliable. *Wilson v. Barrientos,* 926 F.2d 480, 482 (5th Cir.1991). The court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. *Id.* A defendant may not use medical records to refute a plaintiff's testimony at a *Spears* hearing, *Williams v. Luna,* 909 F.2d 121, 124 (5th Cir.1990), but the court may require the defendants in prisoner-rights cases to construct an administrative record to assist the court in determining whether the complaint is frivolous. *Cay,* 789 F.2d at 323 n. 4; *Martinez v. Aaron,* 570 F.2d 317, 319 (10th Cir.1978) (establishing procedure approved in *Cay* ).

In this case, the district court, in compliance with *Cay,* asked the defendants to prepare an administrative record, including evidence from Norton's doctors. The defendants presented the court with Norton's medical records and the affidavit of Dr. Owen Murray. Dr. Murray's affidavit was not subject to cross-examination.

Norton suggests that the fact that he was unable to cross-examine the affiant violates his right to due process. However, the district court did not rely on Dr. Murray's affidavit in dismissing Norton's complaint. Instead, the court decided that, based on the medical records before it, Norton's claims were meritless. The district court's decision to allow Dr. Murray's affidavit to be considered in the *Spears* hearing, to the extent that it was erroneous, is harmless error. Fed.R.Civ.P. 61.

### D

Norton contends that this court erred in denying his request

13

for a transcript of his i.f.p./*Spears* hearing in the district court.  A court reporter was present for the hearing, but there is no tape of the hearing or transcript in the record.

"Fees for transcripts furnished ... to persons permitted to appeal in forma pauperis shall ... be paid by the United States if ... a circuit judge certifies that the appeal is not frivolous (but presents a substantial question)."  28 U.S.C. § 753(f).  In order to succeed on a motion for production of transcripts at government expense, a party must also show why the transcripts are necessary for proper disposition of his appeal.  *Harvey v. Andrist,* 754 F.2d 569, 571 (5th Cir.), *cert. denied,* 471 U.S. 1126, 105 S.Ct. 2659, 86 L.Ed.2d 276 (1985).

Norton contends that the transcript was necessary to review the imposition of a partial filing fee, to determine his indigent status on appeal, and to substantiate his due process claim discussed in section C of this opinion.  Norton's indigence is not disputed in this appeal, and the district court determined his i.f.p. status based on the financial information Norton submitted to the court.  Furthermore, we have held that his due process claim and his underlying Eighth Amendment claim are frivolous.  Finally, Norton has not shown why the transcript is necessary to challenge the district court's order on appeal.  Therefore we find that he does not meet the requirements of section 753(f), and we affirm the denial of his motion for production of a transcript.

E

The district court also denied Norton's motion for

14

appointment of counsel, which Norton cites as error.  We review a district court's decision not to appoint counsel for abuse of discretion. *Jackson v. Dallas Police Dep't,* 811 F.2d 260, 261 (5th Cir.1986).  A district court should appoint counsel in a civil rights case only if presented with exceptional circumstances. *Id.* A district court should consider four factors in making this determination:

> (1) the type and complexity of the case;  (2) whether the indigent litigant is capable of adequately presenting his case;  (3) whether the litigant is in a position to investigate the case adequately;  (4) whether the evidence will consist in large part of conflicting testimony, thus requiring skill in presentation and cross-examination.

*Ulmer v. Chancellor,* 691 F.2d 209, 213 (5th Cir.1982).  We have reviewed the record in this case, and we cannot say that the district court abused its discretion.  It is clear from Norton's medical records that his civil rights claim is meritless, and, in the end, the presence of counsel will not change this record.

## III

Therefore we AFFIRM the district court's dismissal of Norton's civil rights claim as frivolous and AFFIRM the denial of his motion for production of a transcript at government expense.  Furthermore we DENY as untimely Norton's motion to file a reply brief.  *See* Fed.R.App.P. 31(a);  5th Cir.R. 31.4.1.

15