Cornelius TUCKER, Jr., Appellant,

v.

G. BRANKER, Captain, et al., Appellees.

No. 96–5177.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 15, 1998.

Decided May 12, 1998.

---

Rudolph Y. Kim, student counsel, argued
the cause as amicus curiae on the side of

appellant, with whom Steven H. Goldblatt, appointed by the court, and Jose C. Escano, student counsel, were on the briefs.

R. Craig Lawrence, Assistant U.S. Attorney, argued the cause for appellees, with whom Mary Lou Leary, U.S. Attorney at the time the brief was filed, was on the brief.

Before: GINSBURG and TATEL, Circuit Judges, and BUCKLEY, Senior Circuit Judge.

GINSBURG, Circuit Judge:

Cornelius Tucker, until recently a state prisoner in North Carolina, challenges the constitutionality of the filing-fee provision of the Prison Litigation Reform Act of 1995, Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub.L. No. 104–134, § 804, 110 Stat. 1321–66, 1321–73 (1996) (codified at 28 U.S.C. § 1915). Tucker contends that the filing-fee provision violates his rights of access to the courts and to equal protection of the laws, both as protected by the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

## I. Background

In 1892 the Congress gave the district courts discretion to waive for indigents all or part of the fee normally required of a plaintiff upon the filing of a civil action. *See* Act of July 20, 1892, ch. 209, 27 Stat. 252 (codified as amended at 28 U.S.C. § 1915) (hereinafter IFP statute). In 1996 the Congress amended the IFP statute with respect to suits filed by prisoners, which were numerous and growing more so, based upon the belief that most such suits were facially defective, if not outright frivolous. As explained by one of its sponsors, the goal of the PLRA was to reduce the number of such meritless lawsuits:

> Section 2 will require prisoners to pay a very small share of the large burden they place on the Federal judicial system by paying a small filing fee upon commencement of lawsuits. In doing so, the provision will deter frivolous inmate lawsuits. The modest monetary outlay will force prisoners to think twice about the case and not just file reflexively. Prisoners will have to make the same decision that law-abiding Americans must make: Is the lawsuit worth the price?

141 Cong. Rec. S7,526 (daily ed. May 25, 1995) (statement of Senator Kyl).

The PLRA amended § 1915 in several respects relevant to the present case. First, the statute newly requires that in order to qualify as an indigent a prisoner must submit both an affidavit stating that he cannot afford to pay the filing fee, 28 U.S.C. § 1915(a)(1), and a certified copy of his prison trust fund account statement covering the most recent six months, *id.* § 1915(a)(2). Second, the amended statute provides that "the prisoner shall be required to pay the full amount of [the] filing fee," *id.* § 1915(b)(1), upon the following terms. If the prisoner cannot pay the entire fee at once, then he must pay an

> initial partial filing fee of 20 percent of the greater of (A) the average monthly deposits to the prisoner's account; or (B) the average monthly balance in the prisoner's account for the 6–month period immediately preceding the filing of the complaint or notice of appeal.

*Id.* § 1915(b)(1); thereafter, whenever "the amount in [his] account exceeds $10" the prisoner must make monthly payments equal to 20 percent of the income credited to his account during the preceding month until the prisoner has paid the balance of the filing fee. *Id.* § 1915(b)(2). If the prisoner cannot pay all or indeed any of the initial partial filing fee, then under the so-called "safety-valve" provision he may still proceed with his case and pay the whole fee over time. *See id.* § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee"). Third, the statute provides that the district court "shall dismiss" a case filed IFP if it determines that the case "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." *Id.* § 1915(e)(2)(B). Finally, the PLRA retained the provision permitting the court to award

costs to a successful IFP plaintiff, *id.* § 1915(f)(1) (except against the United States); and newly provided that if the court awards costs against an unsuccessful prisoner then the prisoner is required to pay the costs in the same manner as the filing fee. *Id.* § 1915(f)(2).

On March 18, 1996, which was before the effective date of the PLRA, Tucker filed a pro se civil action under 42 U.S.C. § 1983 against one Captain Branker (a correctional officer at the prison in which Tucker was incarcerated) and the President and Vice President of the United States, alleging that the defendants had violated his constitutional rights by, among other things, (1) giving him the drug Thorazine four times a day; (2) refusing to mail "10 suits" to various courts; and (3) housing him with tuberculosis patients who refused to take their medicine. Tucker applied for IFP status claiming that his only income was $20 per month, which he needed for "bare necessities." The prison accounting department certified that as of January 12, 1996 Tucker had no money in his prison trust account. The district court granted Tucker's application to proceed IFP but, pursuant to former 28 U.S.C. § 1915(d), *sua sponte* dismissed Tucker's complaint because it was "without basis in law or in fact." The court denied Tucker's motion for reconsideration and he appealed.

We permitted Tucker to proceed IFP on appeal but, because the PLRA had become effective before he filed his notice of appeal (on May 28, 1996), we ordered him to submit his Prisoner Trust Account Report and a Consent to Collection of Fees from Trust Account and to pay the appropriate portion of the filing fee of $105. Tucker refused to file the report, sign the consent form, or pay the initial fee. Instead, Tucker moved for reconsideration, asserting that the filing-fee provision of the PLRA is unconstitutional and requesting appointment of counsel. Tucker claimed that he was "without income and bare necessities of life for toiletries, stamps, [and] hygiene items which require any and all gifts of monies" and that he was "bankrupt."

We denied Tucker's request for counsel but we did appoint an *amicus curiae* to argue that the filing-fee provision of the PLRA is unconstitutional. Other than his original handwritten motion for reconsideration, Tucker has not filed any brief in support of his position but rather relies upon the arguments of the *amicus*. Although Tucker is no longer incarcerated, his challenge to the PLRA remains alive, as we have held that "release from prison does not relieve [a former prisoner] of past due obligations under the PLRA." *In re Smith,* 114 F.3d 1247, 1249 (D.C.Cir.1997).

## II. Analysis

The *amicus* argues on behalf of Tucker that the filing-fee provision of the PLRA violates his due process right of access to the courts and that it discriminates against prisoners in violation of the equal protection component of due process. We conclude that the filing-fee provision is constitutional.

### A. Due Process

Prisoners have the right, as a matter of due process, to adequate, effective, and meaningful access to the courts. *See, e.g., Lewis v. Casey,* 518 U.S. 343, 349–50, 116 S.Ct. 2174, 2179–80, 135 L.Ed.2d 606 (1996); *Bounds v. Smith,* 430 U.S. 817, 822, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72 (1977); *Procunier v. Martinez,* 416 U.S. 396, 419, 94 S.Ct. 1800, 1814, 40 L.Ed.2d 224 (1974). But they do not ordinarily have a right to cost-free access: "The correct principle is that reasonable costs may be imposed on persons who want to sue." *Lumbert v. Illinois Dep't of Corrections,* 827 F.2d 257, 259 (7th Cir.1987).

The present question, therefore, is whether the filing-fee provision of the PLRA denies prisoners effective access to the courts. For the reasons set out below, we join five other circuits in concluding that it does not. *See Shabazz v. Parsons,* 127 F.3d 1246, 1248–49 (10th Cir.1997); *Norton v. Dimazana,* 122 F.3d 286, 289–91 (5th Cir.1997); *Nicholas v. Tucker,* 114 F.3d 17, 21 (2d Cir. 1997); *Roller v. Gunn,* 107 F.3d 227, 231–33 (4th Cir.1997); *Hampton v. Hobbs,* 106 F.3d 1281, 1284–86 (6th Cir.1997).

We begin with the observation that, under the safety-valve provision, even a destitute

prisoner may file his suit if he wants to, without having to pay any initial fee; his only obligation is to pay the fee when and if he can, as detailed below. 28 U.S.C. § 1915(b)(4); *see Norton,* 122 F.3d at 290–91; *Nicholas,* 114 F.3d at 21; *Roller,* 107 F.3d at 233; *Hampton,* 106 F.3d at 1284. Second, a prisoner with only modest means must make only a proportionately modest up-front payment—20% of the average monthly deposits or balance in his account over a six-month period. Whether the prisoner paid some or none of the fee upon filing, the balance due is collected from him at the 20% rate only when and if "the amount in [his] account exceeds $10." 28 U.S.C. § 1915(b)(1) & (2); *see Roller,* 107 F.3d at 233; *Hampton,* 106 F.3d at 1284. Third, even an indigent prisoner who loses his case and must pay the defendant's costs may do so over time, upon the same terms as the filing fee. 28 U.S.C. § 1915(f)(2)(B). In sum, the payment requirement of the PLRA never exacts more than 20% of an indigent prisoner's assets or income.

■ The *amicus* contends that Tucker challenges the PLRA filing-fee provision "as applied" to him. Although Tucker himself is not clear on the point we shall accept the *amicus*'s characterization of Tucker's challenge for the sake of the argument. The argument is that the fee requirement denies Tucker due process of law by forcing him to choose between filing a lawsuit and being able to buy the necessities of life.

Although Tucker did claim (in his motion for reconsideration of our order that he submit the statement) that he is "without . . . [the] bare necessities of life," he also stated in his application for IFP status before the district court that he receives $20 per month. Under the formula of the PLRA, therefore, Tucker is required to pay only $4 upon filing his appeal and $4 per month thereafter (as long as his account has a balance of at least $10) until the full fee of $105 has been paid.

Tucker's claim that the minimal payments required by the PLRA force him to choose between a lawsuit and the "necessities of life" is manifestly exaggerated. First, the State of North Carolina is constitutionally bound to provide Tucker, as its prisoner, with the ne-

cessities of life, including "adequate food, clothing, shelter, and medical care," *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994), and Tucker does not in his complaint or elsewhere suggest that the State is failing to do so. Second, after paying $4 per month Tucker would still be left with $16 per month for discretionary purchases. That Tucker must choose whether to spend $4 on additional amenities or on his lawsuit, far from unduly burdening his access to court, merely requires him to make the same kind of economic choice that any other would-be civil plaintiff must make. As stated by Judge Posner:

> If the inmate thinks that a more worthwhile use of his funds would be to buy [in Tucker's case, toiletries, stamps, and hygiene items] . . . than to file a civil rights suit, he has demonstrated an implied evaluation of the suit that the district court is entitled to honor.

*Lumbert,* 827 F.2d at 260. Because Tucker is not forced to choose between the necessities of life and his lawsuit, we conclude that the filing-fee provision, as applied to Tucker, does not unconstitutionally impinge upon his right of access to the courts.

The *amicus* cites several pre-PLRA cases in which, under the prior version of § 1915, the courts of appeals held that a district court abused its discretion by requiring an indigent prisoner to pay too great a portion of the filing fee. *See, e.g., Olivares v. Marshall,* 59 F.3d 109, 111–12 (9th Cir.1995) (disapproving fee of $20 for prisoner who had $14.61 in his account, earned $14.61 per month, and received $110 from family over six months, but upholding fee of $30 for prisoner who received $310 from family over six months and spent $35 per month); *In re Epps,* 888 F.2d 964, 968–69 (2d Cir.1989) (reversing fee of $18.47 for prisoner with average monthly income of $61.53). *But see, e.g., Smith v. Martinez,* 706 F.2d 572, 574 (5th Cir.1983) (approving fee of $3 for prisoner who had monthly income of between $11 and $13). *See also, e.g., In re Williamson,* 786 F.2d 1336, 1338–41 (8th Cir.1986) (setting standards for partial filing fees in prisoner civil rights cases); *Evans v. Croom,* 650 F.2d 521, 525 (4th Cir.1981) (approving in part

district court rule requiring payment of up to 15% of sum received by prisoner over six month period). Because these cases were based upon § 1915 rather than upon the due process right of access to court and were decided when that statute gave the district court discretion to waive the fee, they do not lend any support to the proposition that the PLRA is unconstitutional as applied to Tucker.

One due process case does lurk among those the *amicus* cites, namely, *In re Green,* 669 F.2d 779 (D.C.Cir.1981). There, however, the facts were extreme: the district court required the indigent plaintiff to pre-pay not only the full filing fee but also a $100 deposit against costs he might be assessed. *Id.* at 784–86. The percentage-based scheme of the PLRA is, as we have seen, much less burdensome and for that reason constitutional.

The *amicus* also argues that cases such as *M.L.B. v. S.L.J.,* 519 U.S. 102, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996), and *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), require that Tucker be allowed to file his civil suit without having to pay any part of the filing fee, either initially or in installments. The *amicus,* however, reads those cases too broadly. In general, the Supreme Court has held that due process does not require that filing or other fees be waived for indigent civil litigants. *See Ortwein v. Schwab,* 410 U.S. 656, 659–60, 93 S.Ct. 1172, 1174–75, 35 L.Ed.2d 572 (1973) (per curiam) (state may require indigent to pay fee for review of decision reducing welfare benefits); *United States v. Kras,* 409 U.S. 434, 443–46, 93 S.Ct. 631, 636–38, 34 L.Ed.2d 626 (1973) (indigent may be required to pay fee to file for bankruptcy). The Court has held that either the equal protection clause or the due process clause requires that certain fees be waived for indigent defendants in criminal cases, *see, e.g., Griffin v. Illinois,* 351 U.S. 12, 18–19, 76 S.Ct. 585, 590–91, 100 L.Ed. 891 (1956) (plurality opinion) (holding unconstitutional requirement that criminal defendant pay for transcript in order to appeal conviction), and for indigent litigants in civil cases in which certain fundamental interests are at stake, *see, e.g.,*

*M.L.B.,* 519 U.S. at ––– – –––, 117 S.Ct. at 564–67 (state cannot require indigent mother to pay record preparation fee in order to challenge state's decision to terminate her parental rights); *Boddie,* 401 U.S. at 376–82, 91 S.Ct. at 785–88 (because of fundamental nature of marriage and exclusivity of state remedy, state may not require indigents to pay filing fee for divorce proceedings). *M.L.B.* and *Boddie* are clearly inapposite to this civil case. Tucker's claims do not involve fundamental family-related concerns, *see M.L.B.,* 519 U.S. at ––– – –––, 117 S.Ct. at 563–64 ("the Court has consistently set apart from the mine run of cases those involving state controls or intrusions on family relationships"). And, as discussed above, the filing-fee provision of the PLRA "does not present the sort of insurmountable barrier to filing suit considered in those cases." *Roller,* 107 F.3d at 232 n. 1.

■ Finally, the *amicus* argues that the PLRA denies indigent prisoners due process because it requires the district court *sua sponte* to dismiss an IFP case that "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). At least one circuit judge has expressed the view that this provision is unconstitutional. *Mitchell v. Farcass,* 112 F.3d 1483, 1490–93 (11th Cir. 1997) (Lay, J. concurring). Tucker, however, does not have standing to raise this argument (and neither, therefore, has the *amicus*) because the district court did not dismiss Tucker's complaint, pursuant to the statute as amended, for failure to state a claim. Rather, the district court dismissed Tucker's complaint, pursuant to the prior version of § 1915, as frivolous; the PLRA was not yet in force.

For the foregoing reasons we hold that the filing-fee provision of the PLRA does not violate Tucker's due process right of access to the courts.

**B. Equal Protection**

■ The *amicus* argues that the filing-fee provision of the PLRA violates the equal protection component of the due process clause because it discriminates against prisoners. Again, we join four other circuits in concluding that the PLRA does not deny

prisoners the equal protection of the law. *See Lucien v. DeTella*, 141 F.3d 773, 774 (7th Cir.1998); *Nicholas*, 114 F.3d at 19–21; *Mitchell*, 112 F.3d at 1487–89; *Roller*, 107 F.3d at 233–34; *Hampton*, 106 F.3d at 1286–87.

Initially we reject the *amicus*'s argument that the filing-fee provision is subject to strict scrutiny because it substantially burdens a prisoner's fundamental right of access to the courts. A legislative classification that does not burden either a fundamental right or a suspect class must be reviewed under the rational basis test. *See Vacco v. Quill*, —— U.S. ——, ——, 117 S.Ct. 2293, 2297, 138 L.Ed.2d 834 (1997); *Heller v. Doe*, 509 U.S. 312, 319, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257 (1993); *New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976) (per curiam). We have already determined that the filing-fee provision of the PLRA does not burden a prisoner's right of effective access to the courts. *See* Part II.A above; *see also Nicholas*, 114 F.3d at 20; *Roller*, 107 F.3d at 233; *Hampton*, 106 F.3d at 1286. Nor do prisoners or indigents constitute a suspect class. *See Harris v. McRae*, 448 U.S. 297, 323, 100 S.Ct. 2671, 2691, 65 L.Ed.2d 784 (1980) (indigents not a suspect class); *Nicholas*, 114 F.3d at 20 (prisoners not a suspect class); *Roller*, 107 F.3d at 233 (neither prisoners nor indigents a suspect class). Therefore, strict scrutiny is inappropriate and we apply the rational basis test.

A classification passes that test "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller*, 509 U.S. at 320, 113 S.Ct. at 2642. Even if the legislature does not articulate the purpose underlying the distinction, we must uphold it " 'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.' " *Id.* (quoting *Federal Communications Comm'n v. Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 2100–01, 124 L.Ed.2d 211 (1993)).

The filing-fee provision of the PLRA certainly passes the rational basis test. The Congress, which obviously has a legitimate interest in keeping meritless litigation out of the federal courts, could reasonably have concluded that much of the increasing volume of litigation that prisoners bring is indeed meritless. The courts themselves are well aware of that fact. *See, e.g., Nicholas*, 114 F.3d at 20 ("federal courts spend an inordinate amount of time on prisoner lawsuits, only a very small percentage of which have any merit"); *Hampton*, 106 F.3d at 1286 (prisoner claims, "many of which are meritless," are "skyrocketing" in number). Therefore, the Congress legitimately could have determined that requiring indigent prisoners to pay the ordinary filing fee, even if they could do so only over time, would decrease the amount of meritless litigation by causing prisoners to internalize the cost of filing their lawsuits.

Moreover, there are rational reasons for treating prisoners and non-prisoners differently: First, as noted above, a prisoner's basic necessities are paid for by the state; unlike other indigents, therefore, a prisoner is not forced to choose between such necessities and his lawsuit. *See Nicholas*, 114 F.3d at 20; *Roller*, 107 F.3d at 234. Second, perhaps because prisoners have too much time on their hands, litigation has for many become a pastime, *see Nicholas*, 114 F.3d at 20; *Mitchell*, 112 F.3d at 1489; *Roller*, 107 F.3d at 234; that is, just another form of recreation for which the taxpayers foot the bill. Third, because prisons have some measure of control over a prisoner's funds, the requirement of making post hoc installment payments is easier to administer and enforce with respect to indigent prisoners than it would be with respect to indigents at large. *See Roller*, 107 F.3d at 234.

The *amicus*'s argument that the filing-fee provision fails the rational basis test relies almost exclusively upon *Rinaldi v. Yeager*, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966). According to the *amicus* that case stands for the proposition that the Congress cannot treat indigent prisoners with meritorious claims the same way it treats indigent prisoners with meritless claims. The New Jersey statute at issue in *Rinaldi* initially provided every indigent criminal defendant with a free trial transcript for the purpose of his direct appeal, but then required only

defendants who lost their appeals and who were sentenced to prison to reimburse the state for the cost of the transcript. The Supreme Court held that the statute violated the equal protection clause because it discriminated irrationally against unsuccessful appellants who were prisoners—as compared to unsuccessful appellants who received a suspended sentence, or probation, or were fined. 384 U.S. at 308–09, 86 S.Ct. at 1499–1500. Insofar as the purpose of the statute was simply to recoup the State's expenditure, the Court said:

> To fasten a financial burden only upon those unsuccessful appellants who are confined in state institutions ... is to make an invidious discrimination.

*Id.* at 309, 86 S.Ct. at 1500. The only other purpose of the statute advanced by the State was to deter frivolous appeals. To this suggestion the Court responded:

> By imposing a financial obligation only upon inmates of institutions, the statute inevitably burdens many whose appeals, though unsuccessful, were not frivolous, and leaves untouched many whose appeals may have been frivolous indeed.

*Id.* at 310, 86 S.Ct. at 1500.

As we understand *Rinaldi* it does not control this case. The Court in *Rinaldi* concluded that the New Jersey statute was irrational in relevant part because there was only a weak association between failure and frivolity among direct appeals of a criminal conviction. Indeed, in our experience most unsuccessful appeals are not frivolous; they are just unpersuasive. Here, however, the Congress could rationally have found that most civil litigation initiated by indigent prisoners is meritless. Not only do prisoners have a lower opportunity cost for their time than other indigent (and in all likelihood, non-indigent) litigants, *see Mitchell,* 112 F.3d at 1489, but experience shows that their cases are in fact more often than not meritless. For example, during the debate on the PLRA Senator Hatch reported:

> In 1994, over 39,000 lawsuits were filed by inmates in Federal courts, a staggering 15 percent increase over the number filed the previous year. The vast majority of these suits are completely without merit. In-

deed, roughly 94.7 percent are dismissed before the pretrial phase, and only a scant 3.1 percent have enough validity to reach trial.

141 Cong. Rec. S14,418 (daily ed. Sept. 27, 1995); *see also Judicial Business of the United States Courts: Annual Report* 153 (1997). These figures could lead a rational legislator to conclude that a large portion of prisoner litigation in particular is without merit. Therefore, unlike the statute in *Rinaldi* requiring reimbursement by prisoners who lose their criminal appeal but not by other unsuccessful appellants, making the filing-fee provision of the PLRA applicable to indigent prisoners but not to other indigent civil plaintiffs has a rational basis and does not violate the equal protection component of due process.

### III. Conclusion

In sum, we hold that the filing-fee provision of the PLRA does not violate either the appellant's due process right of access to the courts or his right to the equal protection of the laws. Accordingly, Tucker is required either to pay the appropriate filing fee or to suffer his case to be dismissed.

*So ordered.*