(907 P.2d 913)
No. 73,877

In the Matter of the Adoption of A.S.S., a Minor Child.

Opinion filed December 8, 1995.

*David N. Johnson*, of Wichita, for the appellant natural mother.

*Richard A. Macias*, of Wichita, for the appellees adoptive parents.

Before LEWIS, P.J., PIERRON and GREEN, JJ.

PIERRON, J.: K.S., appellant and natural mother of A.S.S., filed a motion to set aside a decree of adoption entered by the district court. Her motion was denied and she timely appeals. We affirm.

On August 10, 1994, K.S. gave birth to A.S.S. On August 19, 1994, she filed a paternity action against Albert Niebla, alleging he was the biological father of A.S.S. Margaret P. Mathewson was K.S.'s attorney in the paternity action. In December 1994, K.S. met with Elizabeth Henry, an attorney with the same firm as Mathewson, regarding the possible placement of A.S.S. for adoption. The mother met more than one prospective set of parents and ultimately selected David and Ann Ediger, appellees, as adoptive parents. On December 24, 1994, approximately 4 months after the birth of A.S.S., K.S. executed a consent to adoption, thereby agreeing to the adoption of A.S.S. by the appellees. The consent was notarized by Henry.

On December 30, 1994, the appellees filed a petition for the adoption of A.S.S. During the pending adoption proceedings, the district court granted temporary custody of A.S.S. to the appellees. The petition stated K.S.'s address to be her parents' residence. Henry testified that when K.S. signed her consent, she indicated she was leaving her parents' home and going to stay with Niebla. K.S. also had other undisclosed locations. However, the appellees' brief states the actual residential address of the mother was unknown.

The district court set February 13, 1995, as the hearing date on the petition for adoption. The court ordered notification of the hearing to be given to K.S., as natural mother, and Niebla and Brian Armitage, as potential fathers. Notice was sent via certified mail, return receipt requested, to each person's attorney. K.S.'s notice of the adoption hearing was sent to Elizabeth Henry, the attorney who had assisted her in the preparation of her consent for the adoption.

On January 3, 1995, the district court entered a journal entry dismissing the paternity action against Niebla without prejudice. On January 4, 1995, Armitage filed a paternity action claiming he and K.S. were sexually involved at or near the time of A.S.S.'s conception and that he might be the biological father.

The maternal grandparents of A.S.S. filed a motion to intervene, pursuant to K.S.A. 60-224, in the instant adoption proceeding, just as they had done in the paternity action filed by K.S. The grandparents sought visitation with A.S.S. until such time as an adoption was final and for any and all other proper relief. The court set a hearing date of February 2, 1995, for the motion to intervene. An amended order for hearing on the motion was later filed on February 1, 1995, changing the date of the hearing to March 6, 1995.

On February 9, 1995, Niebla executed a document entitled: "DISCLAIMER OF PATERNITY, ACKNOWLEDGEMENT OF NOTICE OF HEARING, AND CONSENT TO ADOPTION PROCEEDINGS". Within this document, Niebla acknowledged the birth of A.S.S., stated that he was not the only person having sexual relations with K.S., disclaimed any paternity to A.S.S., acknowledged receipt of notice of the hearing on the petition for

adoption, requested no further notification of the adoption proceedings, and consented to all adoption proceedings involving A.S.S.

The district court held the hearing on the petition for adoption on February 13, 1995, and entered a decree of adoption of A.S.S. in favor of the appellees. The appellees and their attorney were the only other persons present at the hearing. The court found that K.S. named only Niebla and Armitage as the possible fathers of A.S.S. and that paternity testing excluded Armitage as the father. Consequently, by virtue of Armitage's exclusion, the court found that Niebla was the biological father. Niebla's parental rights were terminated since he disclaimed paternity, consented to the adoption, and failed to appear at the hearing. In the decree of adoption, the court found that K.S., the biological mother, by an instrument of writing duly signed, executed, and acknowledged by her, freely and voluntarily consented to the adoption of A.S.S. by the appellees.

On February 23, 1995, 10 days after the district court granted the adoption, K.S. filed a motion to set aside the decree of adoption. K.S. alleged the adoption was void because: (1) it was entered by default; (2) she had not received proper notice of the hearing for the petition for adoption; (3) she wished to withdraw her consent because she was not capable of competently entering said consent; (4) she wished to exercise her rights and responsibilities as the biological mother of A.S.S.; and (5) the appellees would not be prejudiced by reopening the matter.

The district court held a hearing on March 6, 1995, to make a determination on the motion to set aside the decree of adoption. The only person who testified at the hearing was Elizabeth Henry. K.S. objected to Henry's testimony as a violation of the attorney-client privilege. Henry testified that she received the notification of the hearing on the petition for adoption and that K.S. had specifically requested that she not send it to her. Henry also testified that she had regular telephone contact with K.S. approximately two or three times a week throughout the month of January 1995 and that she specifically advised K.S. that the final hearing on the petition for adoption was set for February 13, 1995. Henry recalled

a specific conversation the week of February 6, when K.S. inquired about attending the hearing. Henry testified, "I told her that I had not planned to attend, that it was not necessary for her to attend since she had consented." Last, Henry testified that K.S. did not express an interest in wishing to contest the voluntariness of her consent until February 21, 1995.

K.S.'s motion to set aside the decree of adoption was denied. The district court held: (1) that K.S. had received actual knowledge of the final hearing of the petition for adoption; (2) that the appellees had substantially complied with the notice requirements of K.S.A. 59-2133; (3) the motion to set aside was not timely filed pursuant to K.S.A. 59-2114; (4) that K.S. was limited to relief under K.S.A. 60-260(b) and she failed to offer any support thereof; (5) that the decree of adoption was not void; (6) that K.S. could not assert rights of the putative father; and (7) that the notice requirements are clearly distinguishable between a voluntary and involuntary termination of parental rights for adoption purposes.

Also on March 6, 1995, following the motion to set aside, the court took up the maternal grandparents' motion to intervene in the adoption proceedings. The court heard testimony from both the grandmother and grandfather as to their relationship with A.S.S. during the 4 months between his birth and the subsequent adoption. The court found that pursuant to K.S.A. 38-129, the grandparents could not have established a substantial relationship within the 4-month time period and that it was speculative at best as to whether it was in the best interests of the child to grant the grandparents visitation.

K.S. first argues that K.S.A. 59-2133(b) violates her constitutional due process and equal protection rights. She contends these constitutional rights were violated because the district court provided her notice of the hearing on the petition for adoption by serving her attorney instead of personally serving her.

K.S.A. 59-2133 states:

"(a) Upon filing the petition, the court shall fix the time and place for the hearing. The time fixed for the hearing may be any time not less than 30 days nor more than 60 days from the date the petition is filed. The time fixed for the hearing may be extended by the court for good cause.

"(b) In independent and stepparent adoptions notice of the hearing on the petition shall be given to the parents or presumed parents, unless parental rights have been previously terminated, and any other persons as the court may direct. Notice also shall be given in an independent adoption to a legal guardian of the child or individual *in loco parentis*.

"(c) In an agency adoption notice of the hearing on the petition shall be given to the consenting agency unless waived.

"(d) Notice given pursuant to this section shall not include a copy of the petition."

K.S. bases her equal protection argument on the theory that if possible fathers get personal service pursuant to K.S.A. 59-2136(f), then allowing notice to the natural mother through an attorney, who counselled the mother on her consent, violates her equal protection rights. As a result, K.S. argues the court's notice under K.S.A. 59-2133 is less likely to ensure her awareness of the proceedings than that of a possible father. She further argues that it is illogical and inconsistent to prohibit default judgments in small claims actions where there is no personal, residential, or service by publication, but yet to allow it in an adoption proceeding where the consequences pale in comparison.

We find no merit in the appellant's equal protection argument. Under K.S.A. 59-2136, the notice required where a relinquishment or consent to an adoption has not been obtained from a parent is clearly distinguishable from the situation of a consenting parent who has initiated the proceeding. Also, we see no persuasive argument for comparing the instant case to conservatorship proceedings which have other notice requirements for entirely different reasons. See *In re Guardianship and Conservatorship of Fogle*, 17 Kan. App. 2d 357, 837 P.2d 842 (1992).

As to K.S.'s due process claim, K.S.A. 59-2133 provides that a hearing shall be held within 30 days but not more than 60 days after the filing of a petition for adoption.

The ability of a consenting party to withdraw his or her consent to an adoption is controlled by K.S.A. 59-2114. Section (a) provides in relevant part that "[a] consent is final when executed, unless the consenting party, prior to final decree of adoption, alleges and proves by clear and convincing evidence that the consent was not freely and voluntarily given." The court in *In re Adoption of J.G.*,

10 Kan. App. 2d 483, 485, 702 P.2d 1385, *rev. denied* 238 Kan. 877 (1985), stated: "[A] natural parent may revoke his or her written consent to an adoption, acknowledged before an officer authorized by law to take acknowledgements, at any time before the consent has been filed of record in the district court." Additionally, the burden of proving the consent was not freely and voluntarily given rests with the consenting party. K.S.A. 59-2114(a).

Indeed, as the appellant suggests, caution should be used in adoption proceedings. "We agree that parental rights are fundamental in nature and are constitutionally protected." *In re Adoption of McMullen*, 236 Kan. 348, 352, 691 P.2d 17 (1984). However, there should be a strong emphasis on the finality of adoption proceedings. Finality promotes stability of the home and family, security for the adoptive parents, and closure for the natural parents. See *In re Adoption of J.G.*, 10 Kan. App. 2d at 485.

In our examination of the notice required under K.S.A. 59-2133(b), our ultimate concern is whether the parents or presumed parents received notice of the hearing. In the case before the court, the natural mother, who consented to the adoption, received *actual notice* of the final hearing for the petition of adoption of A.S.S. This notice was not an isolated occurrence, as K.S. was informed on numerous occasions as to the final hearing. Under K.S.A. 59-2133(b), we are not concerned with the type of notice K.S. received, only that there is evidence in the record that she received actual notice of the hearing and was therefore able to attend the hearing if she chose to do so.

We also agree with the district court's ruling that there was no violation of the attorney-client relationship when K.S.'s attorney, Elizabeth Henry, testified that she notified K.S. of the final hearing. The district court held that K.S.'s motion to set aside the decree of adoption waived the attorney-client privilege by placing the notice issue before the court. Further, it is difficult for K.S. to argue that the communications at issue were made "in professional confidence" since the district court had ordered the appellees to provide notice to K.S. through her attorney. See K.S.A. 60-426(a).

The case of *State v. Breazeale*, 11 Kan. App. 2d 103, 713 P.2d 973, *rev. denied* 239 Kan. 695 (1986), is directly on point. The

court quoted the following authorities as persuasive and noted that it was not aware of any authority to the contrary:

" 'Communications by a defense counsel to the client or by a client to the defense counsel regarding the time and place of trial are not confidential and therefore are not protected by the attorney-client privilege. *United States v. Freeman*, 519 F.2d 67, 68-69 (9th Cir. 1975); *United States v. Bourassa*, 411 F.2d 69, 74 (10th Cir.), *cert. denied*, 396 U.S. 915, 90 S.Ct. 235, 24 L.Ed.2d 192 (1969); *United States v. Hall*, 346 F.2d 875, 882 (2d Cir.), *cert. denied*, 382 U.S. 910, 86 S.Ct. 250, 15 L.Ed.2d 161 (1965); *United States v. Woodruff*, 383 F.Supp. 696 (E.D.Pa.1974).' *In re Grand Jury Proc., Des Moines, Iowa*, 568 F.2d 555, 557 (8th Cir.1977).

" 'The district court did not err in requiring counsel to testify. The evidence sought to be elicited from him was not of a confidential nature and hence was not protected by the attorney-client privilege. It simply related to whether he had advised his client of the court's order to appear. We think the Second Circuit aptly appraised the matter when it said:

" ' "The relaying of this message is not in the nature of a confidential communication. [Citations omitted.] Defense counsel served merely as a conduit for transmission of a message. ° ° ° Defendant's counsel had a duty to relay the instructions to his client in his capacity as an officer of the court, and this in no way was inconsistent with his obligation to his client."

*United States v. Hall*, 346 F.2d 875, 882 (2d Cir.1965); *see also United States v. Woodruff*, 383 F.Supp. 696, 698 (E.D.Pa.1974).' *United States v. Freeman*, 519 F.2d 67, 68 (9th Cir.1975).

" 'It is also argued that it was error to permit appellant's former attorney to testify that he notified appellant to be present for his first trial . . . . Relating such notice to the client was counsel's duty as an officer of the court, and was not within the privilege.' *United States v. Bourassa*, 411 F.2d 69, 74 (10th Cir.), *cert. denied* 396 U.S. 915 (1969).

" 'Communications between counsel and defendant as to the trial date do not involve the subject matter of defendant's legal problem. . . . Such communications are non-legal in nature. Counsel is simply performing a notice function. . . .

" '[T]he transmission to defendant from the attorney of the fact of the time of trial is not privileged.' *United States v. Woodruff*, 383 F.Supp. 696, 698 (E.D.Pa.1974).

" 'When an attorney notifies a client of a court date set for the client, . . . [t]he lawyer is acting merely as an agent for the court in communicating the court date to the client. The attorney's later disclosure of the fact that he or she performed this function is not privileged.' *State v. Ogle*, 297 Or. [84, 89, 682 P.2d 267 (1984)] (majority opinion)." 11 Kan. App. 2d at 105-06.

We are also unpersuaded by K.S.'s argument that the failure to effect personal service on her deprived or inhibited her from timely seeking to withdraw her consent to the adoption. Contrary to K.S.'s allegation, the trial court did ensure that notice was conveyed to her. The record contains a certified return receipt of notice of the hearing provided to K.S.'s attorney. Additionally, testimony at the March 6, 1995, hearing demonstrated that K.S.'s attorney provided notice to her on numerous occasions prior to the hearing, with sufficient time for her to contest the proceedings.

Next, K.S. argues she has a right to challenge the journal entry terminating Niebla's parental rights. K.S. argues that she is not asserting the father's rights by challenging the validity of the disclaimer of paternity. Rather, she creatively argues that a "paradoxical result [was] achieved by using a document that disclaims paternity to contradictorily conclude, nonetheless, the signer of the document is, indeed, the Natural Father, whose parental rights should be terminated for failure to assume his parental duties."

The document executed by Niebla was not the only source used to determine that he was the natural father of A.S.S. Throughout the entire proceedings, K.S. has consistently claimed that Niebla was the father. The only other person who might have been the natural father, Armitage, was excluded by paternity testing. Additionally, the district court terminated Niebla's parental rights since he was recognized as a possible father of A.S.S. and received notice of the hearing for the petition for adoption but failed to appear at the hearing. K.S.A. 59-2136(g) provides in relevant part: "If any person identified as the father or possible father of the child fails to appear or, if appearing, fails to claim custodial rights, such person's parental rights with reference to the child shall be terminated."

There is substantial authority to support the district court's ruling that in an adoption proceeding, the natural mother does not have standing to assert the natural father's rights. See *In re Adoption of J.H.G.*, 254 Kan. 780, Syl. ¶ 11, 869 P.2d 640 (1994) (mother contended the failure to terminate the natural father's parental rights pursuant to K.S.A. 59-2136 rendered the adoption decree void.); see also *In re Adoption of Trent*, 229 Kan. 224, 624 P.2d

433 (1981) (court found no basis upon which the natural mother could challenge a separate legal instrument, a written consent, executed by the natural father before the child's birth).

In her last argument raised on appeal, K.S. argues it was reversible error for the district court to enter the decree of adoption notwithstanding the fact of the maternal grandparents' pending motion to intervene. We disagree.

The only right the grandparents could seek in the adoption proceeding was visitation with A.S.S. See K.S.A. 38-129. The fact that the hearing on the grandparents' motion to intervene took place after the decree of adoption has no bearing on the granting of the adoption or whether they can obtain visitation with A.S.S. See *In re Adoption of J.M.U.*, 16 Kan. App. 2d 164, 168, 819 P.2d 1244, *rev. denied* 250 Kan. 805 (1991).

Affirmed.