(76 P.3d 1060)
No. 89,463

JERRY WAYNE SMITH, *Appellant,* v. DAVID R. McKUNE, *et al., Appellees.*

Opinion filed September 26, 2003.

*Jerry Wayne Smith*, appellant pro se.

*Kenneth R. Smith*, special assistant attorney general, and *Phill Kline*, attorney general, for appellee.

Before MALONE, P.J., PIERRON and GREEN, JJ.

GREEN, J.: Jerry W. Smith appeals from a judgment of the trial court denying his request to proceed in forma pauperis and dismissing his lawsuit. We affirm.

Jerry Smith was convicted of several felony offenses in 1975 and received concurrent sentences of 15 years to life imprisonment. In 1993, while on parole, Smith committed a federal felony and was sentenced to 54 months' imprisonment. The Kansas Department of Corrections (KDOC) then issued a warrant to revoke his parole. In 1998, the federal prison released Smith to the custody of the KDOC.

Smith asked the KDOC to convert his indeterminate sentences to a determinate sentence of 36 months' imprisonment under K.S.A. 1993 Supp. 22-3717(f)(2) and K.S.A. 1993 Supp. 21-4724(c)(1) of the Kansas Sentencing Guidelines Act (KSGA). When the KDOC denied his request, Smith and his wife Rebecca filed this action.

Smith maintained that the KDOC's refusal to convert his sentence deprived him of his liberty, "due process and equal protection of the law, breached a lawful duty owed to [him], [and] subjected [him] to deliberate indiffe[re]nce, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence and gross negligence and carelessness." Rebecca asserted that as a result of the KDOC's actions, she suffered "the loss of aid, comfort, society, companionship and support of her spouse, Jerry Wayne Smith." They requested a judgment in excess of $75,000.

The trial court notified Smith that he needed to (1) file an application to proceed in forma pauperis (IFP), pay $3, and send a certified copy of his prison account statement for the past 6 months, or pay a docket fee of $101 and a surcharge of $5; and (2) include a statement of all lawsuits he had filed within the past 5 years.

Smith filed the requested documents and identified his previous lawsuits. He stated that the current petition was "a civil rights/personal injury" petition. The certified statement of Smith's prison account showed that for the past 6 months monthly deposits were made ranging from $9 to $14.10 and that the average monthly balance varied between $.02 and $1.63. Although Smith stated he could not pay $106, he neglected to mention whether he had the ability to pay the $3 IFP fee.

The trial court dismissed Smith's petition for failure to pay costs. Smith moved to alter or amend the order, maintaining that he had complied with the trial court's notice and that he was unable to pay costs. The trial court determined that although the certified statement for Smith's prisoner account showed that he could pay the IFP fee, Smith had failed to do so. The trial court also determined that Rebecca had not shown she was unable to pay the filing fee. As a result, the trial court denied the motion.

Smith filed an objection to the trial court's denial of the motion. He maintained that he only had a small sum left in his account each month after the KDOC deducted his expenses. In addition, he attached a document showing legal expenses of $9 for postage had been deducted that month. He further asserted that the dismissal of the action was improper. Smith also alleged that Rebecca was indigent and requested that she be dismissed from the suit.

The trial court found that Smith and Rebecca had not complied with K.S.A. 2002 Supp. 60-2001(b) and that Smith could not dismiss Rebecca from the lawsuit. As a result, the trial court denied Smith's objection.

Smith first argues that the trial court incorrectly interpreted and applied K.S.A. 2002 Supp. 60-2001. The issues raised by Smith are ones of first impression.

Interpretation of a statute is a question of law, and the appellate court's review is unlimited. An appellate court is not bound by the district court's interpretation of a statute. *Babe Houser Motor Co. v. Tetreault*, 270 Kan. 502, 506, 14 P.3d 1149 (2000).

The assessment of a docket fee in a civil action is governed by K.S.A. 2002 Supp. 60-2001(a), which states: "Except as otherwise provided by law, no case shall be filed or docketed in the district court, whether original or appealed, without payment of a docket fee in the amount of $105 to the clerk of the district court." The docket fee was $101 when the present case was filed. See K.S.A. 2001 Supp. 60-2001(a).

Before 1995, the district court was not required to have the plaintiff, including an inmate plaintiff, pay the docket fee at the commencement of a civil suit if the plaintiff filed a poverty affidavit showing he or she was indigent. See K.S.A. 60-2001(b)(1). Nev-

ertheless, the district court at the conclusion of the case could tax the docket fee against any one or more litigants under K.S.A. 60-2002. *Davis v. Davis,* 5 Kan. App. 2d 712, 713-14, 623 P.2d 1369, *rev. denied* 229 Kan. 669 (1981).

In 1995 and 1996, the legislature amended subsection (b)(1) regarding plaintiff inmates who requested to proceed IFP. See L. 1995, ch. 257, sec. 7; L. 1996, ch. 148, sec. 5. Now, an inmate plaintiff requesting IFP status must file a poverty affidavit and

"a statement disclosing the average account balance, or the total deposits, whichever is less, in the inmate's trust fund for each month in (A) the six-month period preceeding the filing of the action; or (B) the current period of incarceration, whichever is shorter. Such statement shall be certified by the secretary. On receipt of the affidavit and attached statement, the court shall determine the initial fee to be assessed for filing the action and in no event shall the court require an inmate to pay less than $3. The secretary of corrections is hereby authorized to disburse money from the inmate's account to pay the costs as determined by the court. If the inmate has a zero balance in such inmate's account, the secretary shall debit such account in the amount of $3 per filing fee as established by the court until money is credited to the account to pay such docket fee. Any initial filing fees assessed pursuant to this subsection shall not prevent the court, pursuant to subsection (d), from taxing that individual for the remainder of the amount required under subsection (a) or this subsection." K.S.A. 2002 Supp. 60-2001(b)(1).

K.S.A. 2002 Supp. 60-2001(b)(1) authorizes the assessment of an initial docket fee that is not less than $3 if the inmate's poverty affidavit and certified prisoner account statement show that he or she is indigent. The inmate can have the KDOC deduct that amount from his or her account and forward the payment to the district court. Here, although Smith filed the necessary documents showing he was indigent, he failed to pay the $3 initial docket fee. Moreover, Rebecca did not file a poverty affidavit nor did she pay a docket fee.

Although Smith maintains that he could not pay the $106 amount, he ignores the district court's notice which required him to pay only the $3 IFP fee. As a result, we must determine whether the district court erred by requiring Smith to pay the $3 fee.

Although the average monthly balance for his prisoner account was less than $3, Smith still had monthly deposits that were at least

$9. Further, K.S.A. 2002 Supp. 60-2001(b)(1) authorizes a debit to an inmate's account for payment of a docket fee assessed by the district court if funds do not exist. Under this method of payment, any negative balance would eventually be offset by future monthly deposits to the inmate's account. Although Smith had the ability to pay the $3 docket fee, he refused to do so.

As a result, the district court correctly interpreted and applied K.S.A. 2002 Supp. 60-2001(b)(1) by dismissing Smith's lawsuit for his refusal to pay the $3 docket fee.

Next, Smith argues that K.S.A. 2002 Supp. 60-2001(b)(1) deprives him of his constitutional rights of access to the courts, due process, and equal protection under *Lewis v. Casey*, 518 U.S. 343, 135 L. Ed. 2d 606, 116 S. Ct. 2174 (1996), *Bounds v. Smith*, 430 U.S. 817, 52 L. Ed. 2d 72, 97 S. Ct. 1491 (1977), and *Wolff v. McDonnell*, 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974).

Although the district court did not address Smith's constitutional challenge, this court will consider the issue. Whether a statute is unconstitutional is a question of law, and this court has unlimited review. *Skov v. Wicker*, 272 Kan. 240, 244, 32 P.3d 1122 (2001). The constitutionality of a statute is presumed, and all doubts must be resolved in favor of its validity. The court has a duty to construe a statute as constitutionally valid if it can be done within the apparent intent of the legislature. 272 Kan. at 244.

The landmark case regarding an indigent's right of access to the courts is *Griffin v. Illinois*, 351 U.S. 12, 100 L. Ed. 891, 76 S. Ct. 585 (1956). The court held that if a State provides appellate review of criminal convictions, the Due Process and Equal Protection Clauses entitle an indigent criminal defendant to a transcript of the record of the trial, or an adequate substitute therefor, if needed to effectively prosecute an appeal from his or her conviction. 351 U.S. at 18-20. Smith cites *Wolff*, which evolved from *Griffin*.

In *Wolff*, the court held that inmates must be given legal assistance not only for the preparation of post-conviction petitions but also for the preparation of civil rights complaints, unless a reasonable alternative is provided. The Due Process Clause "assures that no person will be denied the opportunity to present to the judiciary

allegations concerning violations of fundamental constitutional rights." 418 U.S. at 579.

In addition, Smith cites *Bounds* and *Lewis*. In *Bounds,* the court extended "the fundamental constitutional right of access to the courts" to providing inmates "with adequate law libraries or adequate assistance from persons trained in the law." The inmate alleging a violation under *Bounds* must show actual injury. *Lewis,* 518 U.S. at 346, 349. Under *Bounds*, the inmate's right is meaningful access to the courts. *Lewis,* 518 U.S. at 351.

This right in the civil context, however, is not absolute or unconditional, except in limited cases where the litigant has a fundamental interest at stake. See *M.L.B. v. S.L.J.*, 519 U.S. 102, 128, 136 L. Ed. 2d 473, 117 S. Ct. 555 (1996) (the State cannot condition the appeal from a decision terminating an indigent party's parental rights upon prepayment of fees for record preparation). Other cases have addressed the payment of docket fees by an indigent inmate.

If a state chooses to establish appellate review in criminal cases or the post-conviction remedy of habeas corpus, it cannot make such review available only to those inmates who can pay the filing fee. To do so violates an indigent inmate's equal protection rights. *Smith v. Bennett,* 365 U.S. 708, 713-14, 6 L. Ed. 2d 39, 81 S. Ct. 895 (1961) (habeas corpus proceeding); *Burns v. Ohio,* 360 U.S. 252, 257-58, 3 L. Ed. 2d 1209, 79 S. Ct. 1164 (1959) (the second level of review in a direct criminal appeal).

Another case involving an indigent inmate's right of access to the courts is *Rinaldi v. Yeager,* 384 U.S. 305, 16 L. Ed. 2d 577, 86 S. Ct. 1497 (1966). The *Rinaldi* Court held that a statute violated the Equal Protection Clause by requiring only inmates to reimburse the county for the cost of providing a transcript in the inmate's unsuccessful appeal. The statute did not require repayment from unsuccessful defendants who received a suspended sentence or probation, or who were sentenced only to pay a fine regardless of their earnings. 384 U. S. at 308. The Court found the classification did not further any of the reasons for the statute: reimbursement, administrative convenience, or deterrence of frivolous appeals. 384 U.S. at 309-11.

Federal courts also assess by statute a filing fee on indigent inmates filing civil cases. In 1996, the statute was amended by the Prison Litigation Reform Act (PLRA). Pub. L. No. 104-134, 110 Stat. 1321, §§ 801-810 (1996). Although the PLRA requires an inmate to pay the full amount of the filing fee, 28 U.S.C. § 1915 (b)(1) (2000), the inmate cannot be prohibited from filing a civil action or appealing a civil or criminal judgment if he or she has no assets or means to pay an initial partial filing fee. 28 U.S.C. § 1915(b)(4).

When filing an IFP civil action or appeal, the inmate must file an affidavit of poverty and a certified copy of his or her prisoner account. 28 U.S.C. § 1915(a)(1)-(2). Under the PLRA, the court shall assess a partial payment of the court fees, when funds exist, by requiring a payment of 20% of the greater of the average monthly deposits in the inmate's account or the average monthly balance in the inmate's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal. 28 U.S.C. § 1915(b)(1)(A)-(B).

After the initial partial filing fee is paid, the inmate is required to make monthly payments in the amount of 20% of the preceding month's income credit to the inmate's account, so long as the account contains more than $10, until the entire fee is paid. 28 U.S.C. § 1915(b)(2). The total payments cannot exceed the amount of filing fees authorized by the statutes for the commencement of the civil case or the appeal of a civil action or criminal judgment. 28 U.S.C. § 1915(b)(3).

Federal inmates have challenged the PLRA as unconstitutional. The courts, however, have rejected their claims. See *Nicholas v. Tucker*, 114 F.3d 17, 20-21 (2d Cir. 1997), *cert. denied* 523 U.S. 1126 (1998); *Roller v. Gunn*, 107 F.3d 227, 231-34 (4th Cir. 1997), *cert. denied* 522 U.S. 874 (1977); *Norton v. Dimazana*, 122 F.3d 286, 289-91 (5th Cir. 1997); *Hampton v. Hobbs*, 106 F.3d 1281, 1284-88 (6th Cir. 1997); *Lucien v. DeTella*, 141 F.3d 773, 775-76 (7th Cir. 1998); *Murray v. Dosal*, 150 F.3d 814, 817-19 (8th Cir. 1998), *cert. denied* 526 U.S. 1070 (1999); *Taylor v. Delatoore*, 281 F.3d 844, 847-51 (9th Cir. 2002); *Shabazz v. Parsons*, 127 F.3d 1246, 1248-49 (10th Cir. 1997); *Mitchell v. Farcass*, 112 F.3d 1483,

1487-89 (11th Cir. 1997); and *Tucker v. Branker*, 142 F.3d 1294, 1297-1301 (D.C. Cir. 1998).

Although there are differences between K.S.A. 2002 Supp. 60-2001(b) and the PRLA, the effect is the same. As a result, in reviewing the constitutionality of K.S.A. 2002 Supp. 60-2001(b), the previously mentioned cases determining the constitutionality of the PRLA are helpful by analogy.

*Access to Courts*

"It is now established beyond doubt that prisoners have a constitutional right of access to the courts" which must be "adequate, effective and meaningful." *Bounds*, 430 U.S. at 821-22. Nevertheless, *Bounds* only requires that inmates be provided with the tools they "need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis*, 518 U.S. at 355.

The docket fee requirement for inmates under K.S.A. 2002 Supp. 60-2001(b)(1) does not deprive an inmate of adequate, effective, and meaningful access to the courts. Although a minimum $3 fee must be assessed, the inmate is not prohibited from filing a lawsuit if funds are not available in the inmate's account. The KDOC is authorized to debit the inmate's account; the debit remains until sufficient deposits have been made to the inmate's account. In essence, the inmate pays as the funds become available.

Under the PLRA, the inmate is required to make monthly payments until the fee is paid, if funds exist, and an inmate cannot be barred from filing a civil action or appeal when no funds exist to pay the fee. These provisions sufficiently guarantee that inmates will have access to the courts, regardless of income. See *Taylor*, 281 F.3d at 848-49; *Norton*, 122 F.3d at 290-91; *Nicholas*, 114 F.3d at 21; *Roller*, 107 F.3d at 233; *Hampton*, 106 F.3d at 1284. The effect of our statute is similar to the effect of the PLRA; an inmate is not barred from filing the lawsuit if there are no funds. Rather, the inmate's account is debited $3 and the filing fee is paid. Any

negative balance in the inmate's account will be offset as deposits are made.

Imposing a filing fee does not deny access to the courts but makes all litigants, inmates and noninmates, weigh the relative merits and risk of litigation before deciding to sue. *Taylor*, 281 F.3d at 849; *Norton*, 122 F.3d at 291; *Nicholas*, 114 F.3d at 21; *Roller*, 107 F.3d at 233; *Hampton*, 106 F.3d at 1285-86. If an inmate decides that his or her funds are better spent on expenses other than a filing fee for a civil suit, the inmate has made an implicit evaluation of the suit's worth that the courts are entitled to honor. *Roller*, 107 F.3d at 233.

Further, the financial impact of the filing fee expense upon an inmate is diminished when compared to a noninmate. Unlike a noninmate, an inmate's financial needs for the " 'essentials of life,' " that is, housing, clothing, food, and medical care, are provided by the government. *Taylor*, 281 F.3d at 849; *Norton*, 122 F.3d at 290-91; *Hampton*, 106 F.3d at 1285.

Like the PLRA provisions, the provisions of K.S.A. 2002 Supp. 60-2001(b)(1) do not violate an indigent inmate's right of access to the courts.

*Due Process*

Due process applies to the deprivation of property and inmates have a protected interest in their money. *Hampton*, 106 F.3d at 1287. The question is what process is due before money in an inmate's account can be applied to a filing fee. *Murray*, 150 F.3d at 819. Three factors are to be considered: "(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest. [Citation omitted.]" 150 F.3d at 819.

Inmates are not absolutely deprived of the benefit of their funds when they are applied toward their debts. The funds are being used to pay the filing fees for the inmate's case just as a noninmate uses his or her funds to pay the fees for filing a case. *Murray*, 150 F.3d at 819; *Hampton*, 106 F.3d at 1287. The same rationale ap-

plies to Smith's case. Moreoever, even if an indigent noninmate does not pay a docket fee when a petition is filed, he or she can be ordered to do so at the conclusion of the case under K.S.A. 60-2002.

The risk of an erroneous deprivation is minimal and does not require additional procedures. The PLRA requires the inmate to file an affidavit and certified copy of his or her prison account statement. The district court, not the prison, assesses the fee. The prison then performs the administrative function of deducting the assessed amount from the inmate's account. *Murray*, 150 F.3d at 819; *Hampton*, 106 F.3d at 1287. The government's interest is to reduce frivolous prisoner suits by requiring the inmate to weigh the economic cost. *Murray*, 150 F.3d at 819; *Hampton*, 106 F.3d at 1288. This reasoning is applicable to Smith's case.

When the government's interest is combined with the satisfactory procedures to assess and pay the fees with the weak private right, the statute does not violate an inmate's right to procedural due process. *Murray*, 150 F.3d at 819; *Hampton*, 106 F.3d at 1288. Again, the same reasoning is applicable to the present case. The government's interest and the satisfactory procedure to assess and pay the fees outweighs Smith's minimal right. As a result, K.S.A. 2002 Supp. 60-2001(b)(1) does not violate Smith's right to procedural due process.

*Equal Protection*

Prisoners and indigents are not suspect classes. *Hampton*, 106 F.3d at 1286; see *Taylor*, 281 F.3d at 849; *Murray*, 150 F.3d at 818; *Tucker*, 142 F.3d at 1300; *Nicholas*, 114 F.3d at 20; *Roller*, 107 F.3d at 233. As discussed earlier, the filing fee provisions of K.S.A. 2002 Supp. 60-2001 do not impinge on an indigent inmate's fundamental right of meaningful access to the courts. As such, the filing fee requirement can be upheld if it is rationally related to a legitimate governmental interest. *Farley v. Engelken*, 241 Kan. 663, 669, 740 P.2d 1058 (1987).

The federal courts noted that the goal of the PLRA was "to deter the large number of frivolous inmate lawsuits that were 'clogging' the federal courts and 'draining' limited judicial resources." *Taylor*,

281 F.3d at 849; see *Murray*, 150 F.3d at 818; *Tucker*, 142 F.3d at 1300; *Nicholas*, 114 F.3d at 20; *Mitchell*, 112 F.3d at 1488-89; *Roller*, 107 F.3d at 234; *Hampton*, 106 F.3d at 1286-87. Inmates often have free time that other litigants do not possess, and inmate litigation has become a recreational activity. As a result, there is a far greater opportunity for abuse of the judicial system by inmates, and a vast majority of cases filed by inmates do not result in relief. *Roller*, 107 F.3d at 234. Congress could have rationally concluded the IFP statute needed significant changes to thwart this abuse of the judicial system by inmates. *Roller*, 107 F.3d at 234.

The *Roller* court also stated Congress may have concluded the prison setting was "uniquely appropriate" for a filing fee requirement and decided to establish uniform national standards for determining IFP status among inmates. The filing fee requirement may also have been limited to prisoners because of the administrative convenience in addressing itself to one phase of the problem at a time. 107 F.3d at 234.

The federal courts considering an equal protection argument held the filing fee provision of the PLRA had a rational basis and was constitutional. *Taylor*, 281 F.3d at 849-50; *Murray*, 150 F.3d at 818; *Tucker*, 142 F.3d at 1300; *Nicholas*, 114 F.3d at 20; *Mitchell*, 112 F.3d at 1489; *Roller*, 107 F.3d at 234; and *Hampton*, 106 F.3d at 1287.

The federal courts that addressed *Rinaldi* found it did not apply because requiring payment of the filing fee under the PLRA for indigent inmate plaintiffs but not to other indigent civil plaintiffs was related to a legitimate government interest. In *Rinaldi*, the distinction was without any justification for the classification made by the statute. *Tucker*, 142 F.3d at 1300-01; *Mitchell*, 112 F.3d at 1489; and *Roller*, 107 F.3d at 234 n.2.

Although research on the legislative history of the 1995 and 1996 amendments to 60-2001(b)(1) did not disclose the legislature's intent, our legislature enacted those amendments at about the same time Congress enacted the PLRA. It is reasonable to assume that the intent of our legislature for enacting 60-2001(b) was the same as the United States Congress for enacting the PRLA: to set a uniform minimum docket fee for inmates, to deter inmates from

filing nonmeritorious lawsuits, and to make inmates accountable for their decisions and thereby preserve limited judicial resources. Unlike *Rinaldi*, the filing fee provision for inmates in K.S.A. 2002 Supp. 60-2001(b)(1) has a rational basis and is constitutional.

Smith's last argument is that the district court lacked jurisdiction to dismiss Rebecca from the case after he filed his notice of appeal.

Several weeks after Smith filed his notice of appeal, Rebecca wrote a letter to the district court. Rebecca stated that she had just learned of the case and had been included as a plaintiff without her knowledge and consent. She asked to be dismissed. Rebecca's signature and address did not appear on the summons and petition. The district court granted her request.

Earlier, the district court had dismissed the lawsuit because Rebecca had failed to pay the docket fee. Rebecca has not appealed that order. Smith also requested that the district court dismiss Rebecca from the case in his second post-judgment motion. Further, Rebecca did not appeal the last order dismissing her from the case, and Smith cannot appear as her attorney. As a result, Smith lacks standing to challenge a ruling adverse to Rebecca. See *In re Adoption of A.S.*, 21 Kan. App. 2d 714, 721-22, 907 P.2d 913 (1995) (mother does not have standing to challenge the termination of father's parental rights in an adoption proceeding). As a result, Smith's argument fails.

The State contends that this court should assess costs and attorney fees against Smith because his case was frivolous.

Kansas Supreme Court Rule 7.07(a) (2002 Kan. Ct. R. Annot. 52) gives an appellate court discretion to assess against a party "any part of the original docket fee, the expenses for transcripts, and any additional fees and expenses allowed in the case." Under subsections (b) and (c), an appellate court may award the expenses incurred for the reproduction of appellee's brief and reasonable attorney fees for services on appeal if the district court had authority to award attorney fees.

K.S.A. 2002 Supp. 60-211(c) and (f) authorize the imposition of monetary sanctions, including reasonable expenses incurred and attorney fees, against an inmate filing a frivolous civil case and the

disbursement of any money in the inmate's account to pay such sanctions.

Although Smith's arguments were not persuasive, his appeal was not frivolous because he did present issues of first impression. Further, the State has not filed a motion and affidavit detailing its costs and attorney fees that were incurred as a result of the appeal. See Supreme Court Rules 7.07(b) and (c) and 5.01 (2002 Kan. Ct. R. Annot. 30). Without a proper motion and affidavit, the State's request will not be considered. See *Conner v. Janes*, 267 Kan. 427, 430, 981 P.2d 1169 (1999).

Affirmed.