NOT DESIGNATED FOR PUBLICATION

No. 112,472

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DEREK DEON OWENS,
*Appellant*.


MEMORANDUM OPINION

Appeal from Johnson District Court; SARA WELCH, judge. Opinion filed June 3, 2016. Affirmed.

*Adam D. Stolte*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before MALONE, C.J., BUSER and BRUNS, JJ.


*Per Curiam*:  Derek Deon Owens appeals his convictions for unintentional second-degree murder, rape, aggravated criminal sodomy, and four counts of violating a protective order. Owens was originally charged in February 2011 and convicted by a jury in February 2014. Over the course of the 3 years in which the case was pending, the district court continued the trial date several times at the request of Owens. Moreover, Owens was represented by several attorneys throughout this time period.

For about 5 months while the case was pending, Owens represented himself, and the district court appointed standby counsel on his behalf. During this time, the district

1

court required the State to produce numerous documents to Owens, and the district court allowed him to use a witness room at the courthouse to review digital documents on a court computer. The district court also appointed a new investigator at Owens' request and allowed the two to use a courtroom to review evidence. Although Owens had initially agreed that the case should proceed to trial on January 7, 2013, he later asked the district court to appoint an attorney to represent him and requested a continuance 4 days before the trial date. The district court granted both requests. For the remainder of his case, counsel represented Owens, and a jury eventually convicted Owens on February 21, 2014.

On appeal, Owens does not challenge the sufficiency of the evidence presented at trial, nor does he claim any trial errors. Instead, for the first time on appeal, he contends that the district court violated his Sixth Amendment right to counsel by not continuing the trial date during the brief period of time he represented himself 13 months prior to trial. Owens argues that the district court should have granted him additional continuances so that he could have more adequately represented himself and, that by not doing so, he was deprived of his constitutional right to represent himself.

We find that the district court went to great lengths to ensure that Owens and his investigator were able to review all the documents provided by the State and that Owens did not take full advantage of some of the opportunities provided to him to review discovery. In addition, we find that Owens does not show how he was prejudiced or injured as a result of the district court's actions and that Owens' ultimate decision to request the reappointment of counsel was voluntary and stemmed from a realization that it was not in his best interests to represent himself. Thus, we affirm.

FACTS

On February 20, 2011, the State charged Owens with first-degree premeditated murder of a female friend. Eventually, the State amended the charges to one count each of first-degree premeditated murder, rape, aggravated criminal sodomy, and four counts of violating a protective order. Owens claimed that the victim was intoxicated and fell on several pieces of furniture while trying to walk around his apartment, causing her death. He further claimed that he and the victim had sexual intercourse during the course of the evening and he discovered her dead the next morning lying in the bed. An autopsy, however, determined that the cause of death was blunt force injuries to the victim's head and chest as well as strangulation as a contributing factor.

Two days after the State had charged Owens, the district court appointed a public defender to represent Owens. However, the public defender withdrew about a month later due to an alleged conflict, and the district court appointed another attorney to represent Owens. A few months later, the district court permitted Owens' second attorney to withdraw after it discovered that Owens had filed a disciplinary complaint against the attorney. The third appointed attorney also withdrew because of an alleged conflict. The district court appointed a fourth lawyer to represent Owens, but Owens also filed a disciplinary complaint against this attorney, so the district court permitted him to withdraw. The district court also entered an order authorizing retention of Dr. Thomas Young to serve as an expert witness on Owens' behalf. Specifically, Dr. Young rendered opinions regarding the victim's cause of death and mechanism of injury.

On May 31, 2012, the district court appointed Scott Toth—an experienced criminal defense attorney—as the fifth attorney to represent Owens. However, Owens became dissatisfied with Toth's representation as well, and Toth filed a motion to withdraw as counsel. During a hearing on the motion held on August 8, 2012, Owens told the district court that he wanted to represent himself. After the district court explained to

3

Owens the risks of doing so, Owens reaffirmed that he wanted to represent himself. Accordingly, the district court granted Owens' request and appointed Toth to serve as standby counsel to assist Owens if needed. The parties then agreed that the trial should commence on January 7, 2013. We note that the trial had originally been set to begin on March 26, 2012, but the district court had continued the date at Owens' request while he was represented by his fourth attorney.

On August 23, 2012, the district court entered an order authorizing Owens to retain Shay Legal Investigations to assist him in preparing for trial. A few weeks later, the State provided Owens with several disks containing witness interview videos, photographs, and other discovery. The State indicated that Owens might have technical difficulties viewing information on computers provided at the jail. Moreover, Toth indicated that he had provided Owens' investigator with all the discovery provided by the State.

On October 11, 2012, Owens filed a motion for additional discovery. During the hearing on the motion, the district court determined that the State did not have much of the additional material Owens was requesting and, as such, it explained to Owens that he would have to subpoena third parties to obtain some of the requested records. The district court also explained to Owens that the amended complaint and the subsequently filed motions to endorse witnesses listed all the State's witnesses. Finally, after addressing each of Owens' requests, the district court explained to Owens that if he wanted to continue the agreed-upon trial date that he would have to file a motion for a continuance explaining his reasons.

On October 31, 2012, Owens filed a motion asking the district court to continue the January trial date because he needed more time to obtain discovery, to review documents, to obtain an expert witness, to send subpoenas, and for his investigator to complete her investigation. On the same day, Owens filed another motion for discovery,

4

requesting 24 items. The State opposed the motion to continue, arguing that Owens and his investigator had sufficient time to prepare for trial.

At the hearing on the motions held on November 6, 2012, Owens stated that he needed more time because he could only communicate with others through letters and that his investigator had not responded to his request for help finding an expert witness other than the one he had previously retained. Evidently, Owens was concerned about a possible issue with Dr. Young's credibility. In response, the State pointed out that the case was nearly 2 years old, that it had gone to great lengths to accommodate Owens and his multiple changes in counsel, and that it had provided approximately 1,200 pages of discovery. The State also argued that Owens could still use Dr. Young as his expert witness and that Owens would not be able to find an expert witness who would testify that the victim died by falling on furniture.

Owens claimed that he was only allowed to go to the law library at the jail "maybe twice a week for an hour" and that "[h]alf of the disks" the State had produced did not work on the jail computers. The State agreed that the computers in the jail's library might not have had the proper code for decoding the disks. When asked by the district court, Toth stated that Owens had not notified him of any technical issues he was having reviewing the disks. Nevertheless, the district court agreed to try to resolve the problem by contacting the jail to arrange for the necessary computer equipment so that Owens could play all the disks.

After reviewing several of the disks that afternoon with the parties, the district court ultimately proposed to have Owens come to the courthouse to play the disks on a compatible computer in a witness room for an extended period of time. Owens agreed that 1 day might be sufficient for him to review the necessary information. The day after the hearing, Owens reviewed the disks on a computer provided by the district court.

5

At the hearing, the district court also addressed Owens' motion for additional discovery. Although the State pointed out that it had already provided Owens with most of the items he requested, the parties agreed that Toth would catalog all the disks that the State had given Toth to make sure that Owens had them all. Also during the hearing, Owens stated that his court-appointed investigator was not responding to his letters, and the district court suggested that he try calling her on the phone, to which Owens responded, "I can try, I guess."

The district court held another hearing on November 29, 2012, to consider further requests for discovery sought by Owens. According to Owens, his investigator had quit and he had written the Kansas Board of Indigents' Defense Services (BIDS) to request another investigator. Toth agreed to contact the investigator on Owens' behalf to make sure that she had in fact quit and to help Owens find another investigator. Moreover, the State provided Owens with 10 additional computer disks containing information that Owens claimed the State had not previously produced. At the conclusion of the hearing, the State also provided Owens with a short report prepared by a law enforcement officer that it had not yet provided to him.

On December 4, 2012, Toth filed a motion to withdraw as standby counsel. In his motion, Toth stated that his relationship with Owens had been "irretrievably broken" after Owens had sent him a letter "indicating in no uncertain term that the defendant wants counsel to withdraw from representation." Two days later, the district court held a hearing on the motion. Toth stated that he had contacted BIDS, which had sent Owens a letter indicating that it had approved the retention of another investigator. The district court eventually permitted Toth to withdraw but explained to Owens that there were no more attorneys available to appoint as standby counsel. Furthermore, the State indicated that it would be providing Owens with newly discovered evidence as well as forensic evidence from the victim's cell phone and computer.

6

On December 7, 2012, a month before the trial was set to commence, Owens filed a motion for a continuance. The district court conducted a hearing on the motion 5 days later, during which Owens claimed that he had located other expert witnesses but that he was not sure whether they would be ready by January 7, 2013. However, he did not identify who the experts were or what their opinions might be. He also claimed that the State had recently given him 27 additional disks of discovery, but the State indicated that it had given him only 6 or 7 additional disks. In addition, Owens claimed that he had still not reviewed all the disks he had originally been provided.

The district court stated that it thought it had solved the discovery issues 1 month earlier by allowing him to use a courtroom computer for as long as he needed to review the disks but that he had indicated he was done early in the afternoon. Regardless, the district court allowed Owens to once again come to the courthouse to review the disks on a computer. The district court also stated that it would contact BIDS to ensure that Owens' new investigator would contact him. Ultimately, however, the district court denied the request to continue the trial date.

The next day on December 13, 2012, the district court held another hearing at which it stated that Owens had reviewed discovery in the courtroom between 10 a.m. and 3:10 p.m. In addition, the district court provided Owens with a transcript of Dr. Young's testimony from another case that Owens had requested. The certified appearance docket indicates that in addition to reviewing evidence on December 13, Owens and his new investigator used the courtroom to review evidence on December 14, 17, and 19. It also shows that he met with his new investigator and Dr. Young on December 21, 2012.

On December 17, 2012, Owens requested standby counsel to answer his questions as he prepared his case for trial. However, he made it clear that he did not want the court to reappoint Toth. The district court denied the request, stating that it was too late to find new standby counsel. Owens then asked the district court if it would appoint Angela

Keck to represent him. Also, Owens' new investigator notified the district court that two of the computer disks would not open, and the district court told Owens that he could return to the courtroom on December 19 and use a different computer to access the information on the disk.

Yet another hearing was held on December 21, 2012. Initially, Owens reiterated his desire to have Keck represent him. The district court restated its concerns about appointing another attorney so close to trial. But the district court told Owens that if he were to contact Keck and if she were willing to take the case, it would appoint her to represent him. Owens once again asked for a continuance of the trial date. The district court denied his request, reasoning that Owens had been in the courtroom the prior 2 weeks reviewing disks and that he had plenty of time to prepare for trial.

Four days before trial on January 3, 2013, the district court held a hearing on the State's motion to endorse a witness. After Owens stated that he had no objection to the new witness, he asked the district court to appoint an attorney to represent him because he could not defend himself:

"The DEFENDANT: I mentioned a couple weeks ago that I needed a lawyer. At this point, I need anything. I need a lawyer but I would take standby counsel or whatever because I can't do this.

"The COURT: Well, this is not a new issue. This is one that months ago we addressed and that was whether Mr. Toth had done anything that would merit his replacement. I determined that you hadn't given me a reason, a good reason, why he couldn't be your lawyer. You chose at that time, instead of having Mr. Toth, to represent yourself.

"I continually advised that I didn't think that was a good idea but you have the right to do it, to represent yourself. And you've tried. Your recognition now that it's a

8

difficult thing is probably true but it's nothing new. It's something that you could have or should have known at the very beginning of this case that you need legal representation.

"You've had [multiple] lawyers, none of whom did I think did anything wrong in your case. And because of that, I told you a long time ago, it was Mr. Toth or do it yourself. And you chose to do it yourself. You have the right to do that."

Accordingly, the district court reappointed Toth to represent Owens and reluctantly continued the trial to April 15, 2013. The district court also stated that it had contacted jail officials who told it that Owens had refused permitted time in the jail's law library on December 23, 25, 26, 2012, and on January 2, 2013. Furthermore, the district court told Owens that "it is clear to me that you're trying to manipulate the system to avoid going to trial."

On February 1, 2012, the case was reassigned to a new district court judge because the prior judge retired. A few weeks later, the new judge allowed Toth to withdraw as counsel and appointed Philip Stein to represent Owens. In doing so, the new judge obtained an agreement from Owens that he would try to cooperate with Stein. Nearly a year later, the case finally went to trial with Stein representing Owens.

Following a 2-week trial, a jury convicted Owens of unintentional second-degree murder, rape, aggravated criminal sodomy, and four counts of violating a protective order on February 21, 2014. The district court sentenced Owens to serve 842 months in prison. Thereafter, Owens filed a timely notice of appeal.

ANALYSIS

*Preservation of Issue for Appeal*

The sole issue presented on appeal is whether the district court violated Owens' constitutional right to self-representation. In his brief, Owens—who is represented by counsel on appeal—acknowledges that he failed to raise this issue below. As a general rule, constitutional grounds for reversal asserted for the first time on appeal are not properly before an appellate court for review. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). There are, however, several exceptions to this rule: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the judgment of the trial court may be upheld on appeal despite its reliance on the wrong ground or having assigned a wrong reason for its decision. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014).

Owens asserts that we may consider the issue presented for the first time on appeal because the Sixth Amendment right to assistance of counsel for one's defense is a fundamental right and that a violation of a defendant's right to self-representation is typically subject to the structural error analysis. See *Kimmelman v. Morrison*, 477 U.S. 365, 374, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986); *State v. Jones*, 290 Kan. 373, 382, 228 P.3d 394 (2010). Although we do not agree with Owens' contention that this case presents a purely legal issue arising on proved or admitted facts, we find that consideration of the issue is appropriate to determine whether there has been a denial of Owens' fundamental rights. Therefore, we will consider Owens' Sixth Amendment challenge on the merits.

*Owens' Right to Self-Representation*

"In a criminal case, the decision to continue a case lies within the sound discretion of the district court, but where a defendant claims the denial of continuance interfered with his or her ability to present a defense, an appellate court reviews the question de novo." *State v. Robinson*, 303 Kan. 11, Syl. ¶ 5, 363 P.3d 875 (2015); see *Jones*, 290 Kan. at 376 ("Generally, the extent of the right to assistance of counsel is a question of law over which this court exercises unlimited review."). Although Owens' argument is not identical to that made by the defendant in *Robinson*, we find that it is appropriate to apply a de novo standard of review. See 303 Kan. at 84-85, 87-90; see also *State v. Lewis*, 299 Kan. 828, 846, 326 P.3d 387 (2014) ("Whether the district court has interfered with a defendant's right to present his defense is reviewed de novo.").

Implicit in the Sixth Amendment to the United States Constitution—as well as in the Kansas Constitution—is not only the right to representation by competent counsel, but also the right to self-representation. See *Jones*, 290 Kan. at 377 (Sixth Amendment); *State v. Cunningham*, 222 Kan. 704, 706, 567 P.2d 879 (1977) (Section 10 of the Kansas Constitution Bill of Rights). In order to invoke the right to self-representation, however, defendants must clearly and unequivocally express a wish to represent themselves after knowingly and intelligently waiving their right to counsel. *Jones*, 290 Kan. at 378.

A valid waiver of the right to counsel requires the district court to advise the defendant on the record of the dangers and disadvantages of self-representation so that the defendant can make the choice "'with eyes open.'" *State v. Collins*, 257 Kan. 408, 413, 893 P.2d 217 (1995) (quoting *State v. Lowe*, 18 Kan. App. 2d 72, 847 P.2d 1334 [1993]). Furthermore, since the right to self-representation is at odds with the right to counsel, courts must indulge every reasonable presumption against waiving the right to counsel. *State v. Vann*, 280 Kan. 782, 793, 127 P.3d 307 (2006).

11

Here, Owens' argument focuses on a 5-month period in a case that lasted more than 3 years. During these 3 years, six attorneys represented Owens, and his trial was continued at least three times. Other than his last attorney, who ultimately represented him at trial, Owens was not satisfied with any of them. Moreover, the district court properly allowed Owens to represent himself—after it warned him of the risks inherent in doing so—and it assisted him in reviewing discovery and in contacting BIDS to ensure that he had the assistance of an investigator to help him prepare for trial. In addition, while representing himself, Owens agreed that the trial would commence on January 7, 2013.

A defendant alleging a violation of his or her right of access to the courts must establish some actual impairment of that right, not merely a theoretical one. *Lewis v. Casey*, 518 U.S. 343, 351-52, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996); *Smith v. McKune*, 31 Kan. App. 2d 984, 990, 76 P.3d 1060, *rev. denied* 277 Kan. 925 (2003). As such, Owens has the burden to prove that the district court's decision substantially prejudiced his rights. *State v. Carter*, 284 Kan. 312, 318, 160 P.3d 457 (2007). In addition, due process prevents a defendant from being punished or retaliated against for exercising his or her constitutional right to counsel of choice. *Robinson*, 303 Kan. at 84 (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S. Ct. 663, 54 L. Ed. 2d 604 [1978]).

The United States Supreme Court has explained:

"Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the

12

assistance of counsel. [Citation omitted.]" *Morris v. Slappy*, 461 U.S. 1, 11-12, 103 S. Ct. 1610, 75 L. Ed. 2d 610 (1983).

Likewise, in *State v. Brockenshire*, 26 Kan. App. 2d 902, 907, 995 P.2d 905, *rev. denied* 269 Kan. 935 (2000), this court held as follows:

"A defendant's right to represent himself or herself does not obligate officials to provide a defendant held in custody pending trial access to a law library, where alternate means are available. When a defendant alleges a violation of his or her right to effectively represent himself or herself, the defendant is required to show actual injury to that right."

A review of the record in the present case indicates that the district court went to great lengths to ensure that Owens was able to obtain and review all the discovery provided by the State. When Owens initially complained of technical issues with viewing the disks provided by the State at the jail, the district court permitted him to examine discovery disks on a computer in a witness room at the courthouse and gave him sufficient time to do so. And, after Owens again claimed that he needed more time to review the disks, the district court permitted him to use a courtroom for several days to look at them on a computer with his investigator. In addition, Owens had in his jail cell approximately 1,200 pages of discovery, which included the victim's autopsy report as well as the preliminary hearing transcript. The State provided Owens with these documents when it turned over discovery after Owens decided to represent himself.

Although Owens did not represent himself until August 2012, he had been provided copies of much of the discovery prior to that time. Additionally, Owens was aware of much of the evidence against him from sitting through his preliminary hearing held on July 26, 2011, and August 5, 2011. On July 26, 2011, the State called 13 witnesses to testify, including Owens' neighbors, his landlord, the coroner who performed the autopsy, a forensic scientist who performed DNA testing, as well as law enforcement officers who investigated the case. In addition, the State offered and the district court

13

admitted 59 exhibits, which included a crime scene diagram, autopsy photographs, lab reports, DNA evidence, and photographs of the crime scene. He also had several conversations with the various court-appointed attorneys who represented him over the course of the nearly 18 months between the time he was initially charged and the time that he began representing himself.

At the hearing on January 3, 2013, the district court questioned Owens' claim that he was not allotted enough time at the jail's library to review the disks. The district court pointed out that it had contacted jail officials who informed the court that they had offered Owens time in the jail's law library on multiple occasions while he was representing himself but that he had refused. Understandably, the district court concluded based on the lengthy history of this case that Owens was attempting to manipulate the system in order to delay the trial date. See *State v. Snodgrass*, 252 Kan. 253, 264, 843 P.2d 720 (1992) ("Defendant cannot complain of the consequences of his own actions or inactions."). We agree with the district court's conclusion and find that Owens was provided with an ample opportunity to prepare for trial.

During a hearing on November 29, 2012, Owens asserted that his investigator had quit and, a few days later, BIDS approved the retention of another investigator on his behalf. The record indicates that the second investigator had frequent contact with Owens and reviewed the disks of discovery with him at the courthouse on December 14, 17, and 19. Moreover, Owens does not claim that his second investigator provided him with inadequate assistance. He instead asserts that the first investigator's absence harmed his ability to review discovery and delayed his efforts to find a new expert. But, as indicated above, Owens was able to review the discovery with his second investigator and failed on multiple occasions to take advantage of the opportunity to use the jail's library to prepare for trial. Otherwise, he does not specify how the first investigator's quitting prejudiced his ability to defend himself nor does he specify what assistance, if any, the second investigator was unable to provide. As such, we do not find the first investigator's

14

withdrawal to support the conclusion that Owens was denied access to the courts or denied an opportunity to defend himself.

Our Supreme Court long ago explained that "[a]n indigent accused has a right to either appointed counsel or pro se representation, but both rights cannot simultaneously be asserted. [Citation omitted.] A defendant who accepts counsel has no right to conduct his own trial or dictate the procedural course of his representation by counsel." *State v. Ames*, 222 Kan. 88, 100, 563 P.2d 1034 (1977). It stands to reason that a defendant who rejects counsel has no right to assert that standby counsel should have assisted him or her beyond requested "basic procedural and evidentiary requirements." *State v. Warren*, No. 110,949, 2015 WL 4879034, at *5-6 (Kan. App. 2015) (unpublished opinion) (quoting *State v. Rassel*, No. 107,336, 2013 WL 1688930, at *2 [Kan. App. 2013] [unpublished opinion]) (explaining the role of standby counsel); see *State v. Mixon*, 27 Kan. App. 2d 49, 52, 998 P.2d 519, *rev. denied* 269 Kan. 938 (2000).

A review of the record indicates that ultimately it was the weight of the impending trial that caused Owens to rethink his decision to represent himself. During a status hearing on December 14, 2014, the district court noted that Owens had been in the courtroom reviewing discovery, and when asked if he needed to return to review more disks, he responded, "I'm not sure. I was going to talk to you. I'm a little overwhelmed with everything. *I would like a lawyer* but I can't use Mr. Toth." (Emphasis added.) Three days later on December 17, 2014, Owens asked the district court to appoint Keck to represent him. Finally, 4 days before trial, Owens formally requested counsel, explaining, "At this point, I need anything. *I need a lawyer but I would take standby counsel or whatever because I can't do this*." (Emphasis added.) The district court not only granted his request—albeit not by appointing the attorney he wanted—but also continued the trial.

It is apparent that once he was faced with the reality that his case would go to trial, Owens made the practical decision that he could not adequately represent himself. We do not find that he was forced into making this decision. Instead, we find that Owens clearly wanted an attorney—he simply did not want Toth. The Sixth Amendment right to counsel that Owens asserts does not include a defendant's right to choose which attorney the district court will appoint to represent the defendant. *State v. Pfannenstiel*, 302 Kan. 747, 759, 357 P.3d 877 (2015). Ultimately, of course, Owens got what he wanted when the district court allowed Toth to withdraw and appointed Stein to replace him.

It is also important to note that Stein had nearly a year to prepare for trial and that there is nothing in the record to indicate that Owens was displeased with his representation. Moreover, Owens does not allege any trial errors in this appeal. In the end, the jury convicted Owens of the lesser crime of unintentional second-degree murder rather than first-degree premediated murder as the State had charged. Thus, it is difficult to see how Owens was possibly prejudiced by anything that occurred during the 5 months he represented himself or by having an attorney represent him at trial.

We, therefore, conclude that Owens has failed to establish that his Sixth Amendment right to self-representation was violated.

Affirmed.