O’SCANNLAIN, Circuit Judge,
dissenting:
Matthew Silva, a Washington state prisoner, is no stranger to the federal courts. During his incarceration, he has filed at least fourteen actions in federal district court. He has succeeded in none of them, and at least four of his suits have been dismissed for failure to state a claim upon which relief may be granted. Undeterred, Silva filed this latest suit under 42 U.S.C. § 1983 alleging violations of his First and Fourteenth Amendment rights, which too was dismissed for failure to state a claim. Silva now seeks appellate review of that determination.
Throughout his many interactions with the federal courts, Silva has proceeded in forma pauperis (“IFP”). That is, he has never had to prepay a single administrative fee associated with his many federal filings. On appeal, Silva once again seeks to proceed IFP, a privilege which he is now clearly denied under the Prison Litigation Reform Act (“PLRA”). Nevertheless, the court today holds that Silva is free to proceed IFP, and that it should adjudicate the merits of his appeal. Because such conclusion flies in the face of the plain language of the PLRA, I would dismiss this appeal unless Silva prepays the appropriate filing fees. Thus, I respectfully dissent from the court’s ruling to the contrary.
I
The PLRA creates a “three-strikes rule” for prisoners seeking to proceed IFP in bringing or appealing a civil suit in federal court. Specifically, the statute provides:
In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.
28 U.S.C. § 1915(g) (emphasis added). There is no claim that Silva is in imminent physical danger. If he had three or more *1107 dismissals for failure to state a claim at the time he filed this appeal, he is simply-barred from proceeding IFP.
II
The majority disregards this clear statutory mandate. Instead, it observes that “[sjection 1915(g) does not expressly state whether a prior dismissal of ‘an action or appeal’ must be final before it can be considered a ‘strike.’ ” Maj. Op. at 1098. Although the statute does not state that a dismissal must become final in order to count as a strike, the majority opines that such a limitation is “fairly implied.” Id. The majority’s rationale for implying a finality limitation into section 1915(g) is unpersuasive.
A
The majority is correct that section 1915(g) does not explicitly state when or whether a dismissal must become “final” in order to count as a strike. But that is precisely the point. The fact that the statute does not state that a dismissal must become “final” to count against the prisoner counsels that we look no further than the fact of dismissal when tallying strikes. The statute is patent on this point. See 28 U.S.C. § 1915(g) (stating that IFP status shall not be granted if, on three or more prior occasions, the prisoner has filed a claim that “was dismissed ” (emphasis added)); accord Robinson v. Powell, 297 F.3d 540, 541 (7th Cir.2002) (Posner, J.). A strike is not contingent in any way on the case’s subsequent appellate process, which is nowhere mentioned in section 1915.
Indeed, section 1915 contemplates only one contingency that is relevant to the inquiry here — whether “the prisoner is under imminent danger of serious physical injury.” 28 U.S.C. § 1915(g). Moreover, Congress has included express language in section 1915(g) indicating that this exception is the only event upon which a strike is contingent. See id. (“[i]n no event” is this court to grant IFP status to a prisoner once he has accumulated three strikes).
The majority’s contrary approach transforms Congress’s silence into an unspoken requirement of “finality” — indeed it mandates an assumption that all trial court dismissals under section 1915(g) were entered in error. Such an interpretation is both contrary to the ordinary and obvious meaning of Congress’s language and without logical support. In short, the atextual reading advanced by the majority “has the anomalous result of allowing a prisoner to file, without payment, a frivolous appeal.” Robinson, 297 F.3d at 541.
B
The majority further opines that to count a dismissal as a strike as soon as it occurs “would be a departure from the usual practice under the Federal Rules,” and would “effectively eliminate our appellate function” in those cases where a third strike is being appealed. Maj. Op. at 1098 (citing Fed. R.App. P. 3). The majority implies that our “usual practice” to allow appeals of right is somehow thwarted by not automatically allowing a prisoner to appeal his third strike free of charge. But “the usual practice” of bringing an appeal under the Federal Rules includes paying the requisite filing fees. See Fed. R.App. P. 3(e). Indeed, proceeding IFP is itself an exception from the “usual practice under the Federal Rules.” See Fed. R.App. P. 24(a) (governing requests for “Leave to Proceed in Forma Pauperis” (emphasis added)).
The PLRA regulates the applicability of that exception in the context of prisoners, not the “usual practice” of appellate proceedings themselves. Indeed, the “unusual” result reached by the plain text of the PLRA is simply that once a prisoner has had three suits dismissed, he may no long *1108 er avoid having to prepay the normal filing fees associated with federal appeals. Adherence to this procedure no more “effectively eliminate[s] our appellate function,” Maj. Op. at 1098, than does the requirement of filing fees in general. A prisoner may still appeal just as any other party may: by prepaying the appropriate fees.[1]
Ill
The majority fails to appreciate the strain that its rule places upon the federal courts. Silva’s case is a prime example. In his time in prison, he has filed no less than fourteen causes of action in various federal courts. Frivolous prisoner claims create inordinate pressure on the federal docket, and the course of Silva’s repeated litigation is just one of many such examples. In fact, some 20,000 civil cases are brought each year by prisoners either alleging civil rights violations or challenging prison conditions. See Admin. Office of the U.S. Courts, Judicial Business of the United States Courts 145 (2010). By one estimate, nearly twenty percent of these cases are dismissed as frivolous, not to mention the almost forty percent that are dismissed because of a prisoner’s failure to comply with court rules. See Bureau of Justice Statistics, U.S. Dep’t of Justice, Challenging the Conditions of Prisons and Jails 20 (1994); see also Taylor v. Delatoore, 281 F.3d 844, 849 (9th Cir.2002) (“The PLRA filing fee provisions were enacted to deter the large number of frivolous inmate lawsuits that were ‘clogging’ the federal courts and ‘draining’ limited judicial resources.”).
The rule crafted by the majority will only make the situation worse. The finality rule that the majority imports into section 1915(g) would toll consideration of the dismissal of a frivolous suit until the case has mandated and the time for the prisoner to file a petition for a writ of certiorari has expired. See Maj. Op. at 1099-100. And should the prisoner actually file a petition for a writ of certiorari, the majority would toll consideration of the dismissal until the Supreme Court has denied the petition. See id. This is more than enough time for a prisoner to file quite a few lawsuits, all the while not having to prepay his fees as most litigants must.
IV
It is undisputed that Silva had at least three prior civil actions that had been dismissed for failure to state a claim. I believe, therefore, that IFP status is inappropriate • and that this appeal should be dismissed unless Silva pays the proper appellate fees.
Accordingly, I respectfully dissent.

. Even if section 1915(g) were read to mandate IFP status in the limited instance where the dismissal being appealed constituted the third strike itself, such a case is not presented here, as Silva seeks to appeal a claim unrelated to those constituting his strikes.